Filed 4/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BEATRICE BROTHERS,<br><br>    Defendant and Appellant. | B255043<br><br>(Los Angeles County<br>Super. Ct. No. PA058905-02) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila C. Lyons, Judge. Affirmed.

    Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

    Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung L. Mar and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Beatrice Brothers of voluntary manslaughter, a lesser included offense of murder, and found true the special allegation she had personally used a deadly and dangerous weapon. On appeal Brothers contends the court erred in failing to instruct the jury sua sponte on involuntary manslaughter. She also contends there is insufficient evidence to support the jury's verdict. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Amended Information Following Our Reversal of the Judgment*

In December 2011 this court reversed Brothers's conviction for first degree murder. We held the trial court had prejudicially erred in instructing the jury with former CALCRIM No. 400 because, as written, that instruction reasonably permitted the jury to convict Brothers of first degree premeditated murder based solely on the mental state of her codefendants. (See *People v. Brothers* (Dec. 12, 2011, B225376) [nonpub. opn.].)

Following issuance of the remittitur in February 2012, Brothers was recharged in an amended information with one count of murder (Pen. Code, § 187, subd. (a))[1] and one count of torture (§ 206). It was specially alleged as to both counts Brothers had personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)). Brothers pleaded not guilty and denied the special allegation. The torture count was dismissed prior to trial.

2. *The Evidence at Trial*

In December 2005 Brothers was living in her home with several children ages 14 and under, including her son Sidney, granddaughter Mimi, John B. and his brother Antwan. John and Antwan's mother, Catherine Hoskins, lived in the converted garage behind the front house with her boyfriend, Bobby Gates. Brothers had known Gates since childhood and had invited him, Hoskins and Hoskins's children to live with her after discovering they were homeless. Brothers treated John and Antwan as if they were her own grandchildren. Lachelle Robinson, Brothers's adult daughter and Mimi's mother, lived across the street.

---

[1] Statutory references are to this code.

Early in the morning of December 5, 2005 Brothers learned information that caused her to believe Gates had sexually molested Mimi and John.[2] Brothers immediately summoned Gates to the main house to interrogate him about the alleged sexual abuse. She also asked Sidney to get Robinson from across the street. Within a few minutes of Robinson's arrival, Brothers's boyfriend, Sam Persons, also arrived at the house with his adult nephew, Christopher Yancy. According to the prosecution,[3] Gates denied molesting the children but Brothers did not believe him. She beat Gates, striking him in the head and face multiple times with a broomstick with such force the stick broke in half. Then, Persons, Yancy and Brothers tied Gates up and moved him to the garage where they continued to beat him about the face and body and burn him with cigarettes. One of the men shoved a large cloth gag down Gates's throat, causing him to suffocate. Los Angeles County Deputy Coroner Dr. Paul Gliniecki, who performed the autopsy on Gates, opined Gates had died of asphyxiation due to airway obstruction and other contributing factors, including blunt force trauma. After the beating, Brothers returned to the main house and told Robinson, "It's over." Gates's body was found the next day on the side of the freeway. His hands were bound, and his body was covered by a plastic tarp that had been set on fire.

Unlike in her first trial, Brothers testified in her own defense. She stated that, when she arrived home in the early morning of December 5, 2005, Sidney told her Gates had sexually abused Mimi and John. Brothers questioned the children, and they confirmed the abuse. Brothers became extremely upset and angry. She immediately

---

[2] The court admitted evidence of the molestation allegations not for its truth, but for the effect on Brothers's state of mind, and repeatedly advised the jury of that limitation.

[3] Robinson was called to testify at trial and invoked her Fifth Amendment privilege against self-incrimination. Her testimony from Brothers's first trial was read into the record. John and Antwan were also called to testify but claimed they could not remember any details from the incident. Audio recordings of portions of their interviews with police were introduced into evidence as People's exhibit No. 49 and transcribed for the jury. The audio recordings are part of the record on appeal; the transcripts of the recordings were not introduced as exhibits and are not included in the appellate record.

3

called Gates to the main house and demanded Sidney wake up Robinson and bring her to the house. When Gates arrived in the living room, Brothers questioned him about the molestation; and he did not deny it. He said he must have been drunk when it happened. Brothers became enraged. She grabbed a broom from a nearby closet and started beating Gates repeatedly in the face and head with the wooden broom handle. The handle broke during the beating. Persons and Yancy arrived at the house during this time although Brothers had not called them and did not know why they had come. Persons told Brothers to calm down, but she was unable to calm herself. She informed Persons that Gates had molested the children. Persons and Yancy then tied Gates up and moved him to the garage. Brothers followed them. Persons and Yancy repeatedly hit and kicked Gates. Brothers also participated in the beating but denied burning Gates with cigarettes. During the attack, Yancy used some sort of object to shove a large cloth gag far down Gates's throat. The entire incident happened very fast. After a few minutes, Brothers left the garage to attend to her dog. As she left, she saw that Gates was not moving. Brothers did not know whether Gates was still alive when she left the room. That was the last time she saw Gates.

During closing argument the prosecutor urged the jury to find Brothers guilty of first degree murder under the theory that Gates had died during the commission of torture, and Brothers had either personally inflicted or aided and abetted the torture. Alternatively, the prosecution argued Brothers was guilty of murder, either as the perpetrator or as an aider and abettor, because she had committed a homicide with malice.[4] Brothers's counsel urged the jury to acquit Brothers of murder and find her client guilty of voluntary manslaughter: "In this case, what Ms. Brothers is guilty of is voluntary manslaughter and not murder." "There's no question that what Ms. Brothers did that night was acting in the heat of passion."

---

[4] The People did not proceed under the theory that Brothers had committed first degree premeditated murder.

The jury was instructed, among other things, as to murder (CALCRIM No. 520), first degree murder by torture (CALCRIM No. 521), first degree felony murder by torture (CALCRIM Nos. 540A, 540B, 810), aiding and abetting (CALCRIM Nos. 400, 401), provocation reducing murder to manslaughter (CALCRIM No. 522) and voluntary manslaughter (CALCRIM No. 570). The defense did not request, and the court did not give, an instruction on involuntary manslaughter.

The jury acquitted Brothers of murder and found her guilty of voluntary manslaughter. It also found true the special allegation she had used a deadly or dangerous weapon. The court sentenced Brothers to 12 years in prison, the upper term of 11 years for voluntary manslaughter and a consecutive one-year term for the weapon enhancement.

## DISCUSSION

1. *The Trial Court Did Not Have a Sua Sponte Duty To Instruct the Jury on Involuntary Manslaughter, a Lesser Included Offense of Malice Murder*

   a. *Standard of review*

The trial court has a duty to instruct the jury sua sponte on all lesser included offenses if there is substantial evidence from which a jury can reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater. (*People v. Whalen* (2013) 56 Cal.4th 1, 68; *People v. Rogers* (2006) 39 Cal.4th 826, 866.) The duty exists even when the lesser included offense is inconsistent with the defendant's own theory of the case and the defendant objects to the instruction. (*People v. Banks* (2014) 59 Cal.4th 1113, 1160; *People v. Breverman* (1998) 19 Cal.4th 142, 155.) This instructional requirement "'prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits.""'" (*People v. Smith* (2013) 57 Cal.4th 232, 239-240; accord, *Banks,* at p. 1160; *People v. Campbell* (2015) 233 Cal.App.4th 148, 162.)

5

We review the trial court's failure to instruct on a lesser included offense de novo (see *People v. Licas* (2007) 41 Cal.4th 362, 367; *People v. Manriquez* (2005) 37 Cal.4th 547, 581) considering the evidence in the light most favorable to the defendant (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5).

> b. *Murder, voluntary and involuntary manslaughter and application of the felony murder rule*

Murder is "the unlawful killing of a human being or a fetus with malice aforethought." (§ 187, subd. (a).) "Malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) It is implied when the defendant engages in conduct dangerous to human life, "'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for human life.'" (*People v. Bryant* (2013) 56 Cal.4th 959, 965 (*Bryant*); accord, *People v. Chun* (2009) 45 Cal.4th 1172, 1181 (*Chun*).)

Both voluntary and involuntary manslaughter are lesser included offenses of murder. (*People v. Thomas* (2012) 53 Cal.4th 771, 813.) When a homicide, committed with malice, is accomplished in the heat of passion or under the good faith but unreasonable belief that deadly force is required to defend oneself from imminent harm, the malice element is "negated" or, as some have described, "mitigated"; and the resulting crime is voluntary manslaughter, a lesser included offense of murder. (*Bryant, supra,* 56 Cal.4th at p. 968 ["[a] defendant commits voluntary manslaughter when a homicide that is committed either with intent to kill or with conscious disregard for life— and therefore would normally constitute murder—is nevertheless reduced or mitigated to manslaughter"]; *People v. Milward* (2011) 52 Cal.4th 580, 587 ["[m]alice is negated when the defendant kills as a result of provocation or in 'imperfect self-defense'"]; see also § 192, subd. (a) [voluntary manslaughter ].)

Involuntary manslaughter, in contrast, is the unlawful killing of a human being without malice. (§ 192.) It is statutorily defined as a killing occurring during the commission of "an unlawful act, not amounting to a felony; or in the in the commission

6

of a lawful act which might produce death, [accomplished] in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) Although the statutory language appears to exclude killings committed in the course of a felony, the Supreme Court has interpreted section 192 broadly to encompass an unintentional killing in the course of a noninherently dangerous felony committed without due caution or circumspection. (See *People v. Burroughs* (1984) 35 Cal.3d 824, 835 (*Burroughs*) ["the only logically permissible construction of section 192 is that an unintentional homicide committed in the course of a noninherently dangerous felony may properly support a conviction of involuntary manslaughter, if that felony is committed without due caution and circumspection"], overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 88-91; *Bryant, supra,* 56 Cal.4th at p. 966 [same].)

When the homicide occurs during the commission of an inherently dangerous felony, the homicide may be murder under the felony murder rule, irrespective of the presence or absence of malice. The only mental state at issue for application of the felony murder rule is the specific intent to commit the underlying felony. (*Bryant, supra,* 56 Cal.4th at p. 964; *People v. Gonzalez* (2012) 54 Cal.4th 643, 654.) If the underlying felony is one specifically identified in section 189, such as torture, robbery or kidnapping, the resulting homicide is murder in the first degree; otherwise, the offense is second degree felony murder. (See § 189 [identifying felonies subject to first degree felony murder rule]; *Chun, supra,* 45 Cal.4th at p. 1181 [one who kills in course of inherently dangerous felony not otherwise identified in § 189 is guilty of second degree felony murder].) However, when the underlying felony is an assaultive crime, the assault merges with the homicide; and application of the felony murder rule is prohibited. (*Chun,* at p. 1200 ["[w]hen the underlying felony is assaultive in nature . . . the felony merges with the homicide and cannot be the basis of a felony-murder instruction"]; *Bryant,* at p. 966 [same]; see *People v. Ireland* (1969) 70 Cal.2d 522, 539 [to allow use of felony murder rule when underlying felony is assault would preclude jury from considering the issue of malice in all cases where the homicide resulted from felonious

7

assault, a category that includes the great majority of all homicides; "[t]his kind of bootstrapping finds support neither in logic nor in law"].)[5]

Not neatly resolved by this statutory and case law authority is the question we initially addressed in *People v. Garcia* (2008) 162 Cal.App.4th 18 whether an unjustified homicide in the course of an inherently dangerous assaultive felony (that is, a killing not amounting to felony murder) and accomplished without malice is voluntary or involuntary manslaughter. In *Garcia* the defendant, charged with murder, was found guilty of the lesser included offense of voluntary manslaughter. On appeal he argued the trial court erred in refusing his request to instruct the jury on involuntary manslaughter. In finding the instruction unwarranted, we focused on the statutory elements of involuntary manslaughter under section 192 as well as the Supreme Court's interpretation of that statute in *Burroughs*, *supra*, 35 Cal.3d at page 835, and concluded that, even absent malice, a killing during an inherently dangerous assaultive felony did not fall within the elements of involuntary manslaughter as defined. From that premise, and mindful of the Court's prior pronouncements that such a killing must be some form of manslaughter (see *People v. Hansen* (1994) 9 Cal.4th 300, 312, overruled on another ground in *Chun, supra,* 45 Cal.4th at p. 1199), we reasoned the offense must be voluntary manslaughter. (*Garcia,* at pp. 32-33.) Accordingly, we found no duty to instruct the jury on involuntary manslaughter. (*Ibid.*)

Pursuant to our discussion in *Garcia,* the Fourth Appellate District in *People v. Bryant* reversed a defendant's conviction for second degree murder, finding the trial court had erred in failing to instruct the jury on a "*Garcia* type" voluntary manslaughter, that is, a homicide committed without malice in the course of an inherently dangerous assaultive felony. After granting review in *Bryant*, the Supreme Court expressly disapproved of *Garcia* to the extent it found a homicide in the course of an inherently dangerous assaultive felony must be voluntary, rather than involuntary, manslaughter

---

[5] This prohibition of the application of the felony murder rule to underlying assaultive felonies resulting in death, identified in *People v. Ireland, supra,* 70 Cal.2d at page 539, is known in our jurisprudence as the *Ireland* merger doctrine.

regardless of the presence of malice. (*Bryant, supra,* 56 Cal.4th at p. 970.) The *Bryant* Court concluded that, absent malice, the offense could not, as a matter of law, be voluntary manslaughter. (See *ibid.* ["A defendant who has killed without malice in the commission of an inherently dangerous assaultive felony must have killed without either an intent to kill or a conscious disregard for life. Such a killing cannot be voluntary manslaughter because voluntary manslaughter requires either an intent to kill or a conscious disregard for life."].) Because a killing without malice in the course of an inherently dangerous assaultive felony is not voluntary manslaughter, the *Bryant* Court held, the trial court had no duty to instruct the jury that it could be. The Court expressly declined to reach the corollary question whether an instruction on involuntary manslaughter was warranted by the evidence because that "contention was not considered by the Court of Appeal and is distinct from the question on which we granted review." (*Id.* at p. 971.)

Justice Kennard, concurring in the judgment in *Bryant*, wrote separately to reach the question left open by the *Bryant* majority. In Justice Kennard's view, a killing accomplished without malice during the course of an inherently dangerous assaultive felony must be involuntary manslaughter. (*Bryant, supra,* 56 Cal.4th at p. 974 (conc. opn. of Kennard, J.).) However, recognizing the law had not been sufficiently "well elucidated" at the time of the defendant's trial, Justice Kennard explained she would have found no sua sponte duty in that case to instruct on involuntary manslaughter. (*Ibid.*) On remand to the Court of Appeal to reach that very question, the Fourth Appellate District expressly adopted Justice Kennard's analysis in part. Assuming, without deciding, that an involuntary manslaughter instruction was warranted by the evidence, the court held there was no sua sponte duty to give the instruction because the rule had not been well clarified or understood prior to *Bryant*. (See *People v. Bryant* (2013) 222 Cal.App.4th 1196, 1205 (*Bryant II*).)

c. *There was no substantial evidence of the absence of malice to warrant an involuntary manslaughter instruction*

Citing the Supreme Court's decision in *Bryant,* decided on June 3, 2013 and the Fourth District's opinion in *Bryant II,* decided on December 18, 2013, Brothers contends that it had become a well established principle of law by the time of her retrial in February 2014 that a homicide committed without malice during the course of an inherently dangerous assaultive felony not otherwise amounting to felony murder was involuntary manslaughter; and the trial court erred in failing to instruct the jury sua sponte on that lesser included offense of malice murder. Because the jury rejected the People's felony murder theory, she argues, the failure to give the instruction was prejudicial.[6]

The Attorney General insists *Bryant* did not reach this issue and Justice Kennard's concurring opinion is not controlling. The Attorney General is technically correct on both counts. However, if an unlawful killing in the course of an inherently dangerous assaultive felony without malice must be manslaughter (*People v. Hansen, supra,* 9 Cal.4th at p. 312) and the offense is not voluntary manslaughter (*Bryant, supra*, 56 Cal.4th at p. 970), the necessary implication of the majority's decision in *Bryant* is that the offense is involuntary manslaughter. Accordingly, an instruction on involuntary manslaughter as a lesser included offense must be given when a rational jury could entertain a reasonable doubt that an unlawful killing was accomplished with implied malice during the course of an inherently dangerous assaultive felony. Still, "'the existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense. . . .' [Citation.] Such instructions are required only where there is

_____

6 The Attorney General's assertion that Brothers has forfeited this argument because she failed to request the lesser-included-offense instruction at her retrial is bewildering. Silence cannot constitute a forfeiture of an argument the trial court violated its sua sponte obligation to instruct on a lesser included offense—that is the very meaning of sua sponte. (See *People v. McCurdy* (2014) 59 Cal.4th 1063, 1075, fn. 3 [argument that court failed to instruct sua sponte on general principle of law relevant to issues raised by evidence does not require action on the part of the defendant at trial in order to preserve argument for appeal]; *People v. Alvarez* (1996) 14 Cal.4th 155, 220 [same].)

'substantial evidence' from which a rational jury could conclude" the defendant committed the lesser, but not the greater, offense. (*People v. DePriest* (2007) 42 Cal.4th 1, 50.)

In contending there was substantial evidence to warrant the instruction, Brothers relies on her testimony that she did not know "this was going to happen." Brothers did not explain what she meant by that off-handed remark in her testimony; and, assuming Brothers meant she did not intend to kill Gates, intent to kill is an element of express, not implied, malice. As discussed, malice is implied when the defendant engages in an act the natural consequences of which are dangerous to life and acts with conscious disregard for human life. (*Chun, supra,* 45 Cal.4th at p. 1181.) Even crediting Brothers's testimony in its entirety, there was simply no evidence from which a reasonable juror could entertain a reasonable doubt that Brothers had acted in conscious disregard of the risk her conduct posed to Gates's life. Brothers's own account unequivocally established she engaged in a deliberate and deadly assault because she had been enraged, "out of control," and unable to calm herself. She admittedly beat Gates repeatedly on the head and face with the large wooden broom handle with great force, causing blunt force trauma the deputy coroner testified was a contributing cause of death. She also continued to beat Gates in the garage, as did Persons and Yancy, leaving the scene only after Yancy had forced the large cloth gag down Gates's throat and Gates had stopped moving. Brothers acknowledged that, at that point, she did not know whether Gates was alive or dead. There was no evidence of an accidental killing, gross negligence or Brothers's own lack of subjective understanding of the risk to Gates's life that her and her confederates' conduct posed. On this record, the trial court had no sua sponte duty to instruct the jury on involuntary manslaughter. (See *People v. Guillen* (2014) 227 Cal.App.4th 934, 1028 [involuntary manslaughter instruction unwarranted under *Bryant* when the evidence left no room for reasonable doubt that the defendant acted with intent to kill or conscious disregard for human life; "each appellant knew the risk involved to Chamberlain when they violently attacked him"]; see generally *People v. Evers* (1992) 10 Cal.App.4th 588, 596 ["If a defendant commits an act endangering human life, without realizing the risk

11

involved, the defendant has acted with criminal negligence. By contrast where the defendant realizes and then acts in total disregard of the danger, the defendant is guilty of murder based on implied malice" unless the malice is otherwise negated by heat of passion or imperfect self-defense.].)

In sum, when the evidence presents a material issue as to whether a killing was committed with malice, the court has a sua sponte duty to instruct on involuntary manslaughter as a lesser included offense, even when the killing occurs during the commission of an aggravated assault. (See *Bryant, supra*, 56 Cal.4th at p. 970; *People v. Abilez* (2007) 41 Cal.4th 472, 515 ["'[i]f the evidence presents a material issue of whether a killing was committed without malice, and if there is substantial evidence the defendant committed involuntary manslaughter, failing to instruct on involuntary manslaughter would violate the defendant's constitutional right to have the jury determine every material issue'"].) However, when, as here, the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter. (See *People v. Cook* (2006) 39 Cal.4th 566, 596 ["[Defendant] savagely beat Sadler to death. Because the evidence presented at trial did not raise a material issue as to whether defendant acted without malice, the trial court was not obliged, on its own initiative, to instruct the jury on involuntary manslaughter as to victim Sadler."]; *People v. Guillen, supra,* 227 Cal.App.4th at p. 1027.) Otherwise, an involuntary manslaughter instruction would be required in every implied malice case regardless of the evidence. We do not believe that is what the Supreme Court intended in *Bryant*.

2. *Substantial Evidence Support's the Jury's Verdict*

Brothers also contends her voluntary manslaughter conviction must be reversed because there was insufficient evidence she acted with malice, that is, an intent to kill or a

12

conscious disregard for life.[7]  In particular, she contends the evidence was undisputed that Yancy, not she, stuffed the gag down Gates's throat, causing him to asphyxiate within a few minutes.  Contrary to Brothers's contention, the record is replete with substantial evidence of Brothers's implied malice.  She personally beat Gates with a dangerous weapon, a contributory cause of his death.  There was also evidence she aided and abetted Yancy and Persons in committing the homicide, either by directly enlisting their help or by participating along with them in the beating.  The jury found Brothers, either directly or as an aider and abettor, acted with malice but under substantial provocation that mitigated the malice and reduced the offense to voluntary manslaughter. Ample evidence supports that finding.

---

[7]     In addressing a challenge to the sufficiency of the evidence to support a verdict, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict— i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

13

## DISPOSITION

The judgment is affirmed.


                                        PERLUSS, P. J.

We concur:



        ZELON, J.



        IWASAKI, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.