Filed 12/14/15  P. v. Garcia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G052239 |
| v. | (Super. Ct. No. INF064789) |
| JOSE LUIS GARCIA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Richard A. Erwood, Judge.  Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Jose Luis Garcia appeals from his conviction for second-degree murder for killing a member of a rival gang. He contends the trial court should have instructed the jury sua sponte on involuntary manslaughter and that there was insufficient evidence of the primary activities of the gang he associated with. Finally, he contends he should have received an extra day of credit for presentencing time served.

We affirm the judgment and the sentence. Given the evidence elicited at trial, no rational trier of fact could have concluded Garcia acted without malice, as that term is employed in criminal law. Likewise, sufficient evidence supported the gang enhancement. His presentence custody credits were properly calculated.

## FACTS

On February 20, 2009, sixteen-year-old Christian Hernandez went to the Indio Date Festival with fellow members of the Jackson Terrace Gang. They were involved in a verbal confrontation with members of a rival gang (Coachella), and all the gangsters were ejected from the fair. Hernandez called his mother to pick him up and specified a location covered by security cameras because he was afraid the rival gang would come after him if they found him alone.

He was sitting in front of his apartment building with his mother shortly after midnight when three young men walked by and called out the Coachella gang name. Christian's mother went inside and urged him to, but before he could accede, she heard shots and found him mortally wounded outside. He'd been shot in the back. He called to her before dying.

A police officer stopped and questioned Garcia as he walked near the scene shortly after the shooting, but he was released without any further action after the officer was told he did not fit the description of the shooter. Garcia was brought in for further questioning during the evening of March 10, 2009, after being arrested at a traffic stop. During the course of his interview, after first strenuously denying his involvement, he

2

admitted shooting Hernandez.  The reason, he said, was that Hernandez had spoken disrespectfully of a gang that Garcia "back[ed] up," North Side Indio, whereupon Garcia "got mad," pulled out a gun, and began firing at Hernandez.  Garcia continued to shoot even as Hernandez tried to flee, fell, then got up again and ran before finally collapsing. Three bullets were recovered from the crime scene, not including the one that killed Hernandez.[1]

During the early morning of March 11, officers took Garcia to the area where the shooting had occurred.  There he walked them through what happened, and they searched for the gun Garcia told them he had discarded in some nearby bushes.  The gun was not recovered.

At trial in 2014, Garcia's chief defense was that he was not the shooter, his confession notwithstanding.[2]  The defense elicited expert testimony regarding false confessions, especially those from people with limited intelligence.  The expert did not testify specifically about Garcia, only about false confessions in general.

The jury acquitted Garcia of first degree murder, convicted him of second degree murder, and found the street gang enhancement of Penal Code section 186.22 and the discharge of firearm enhancement true.[3]  Garcia received an indeterminate sentence of 40 years to life with a credit of 1,837 days for time served.  The credits were calculated from March 11, 2009, the date of his incarceration.

---

[1]     Two of the bullets went into a nearby apartment, one of them into a bedroom in which children were sleeping.

[2]     This was Garcia's second trial.  The first trial, held in 2013, resulted in a hung jury.

[3]     All further statutory references are to the Penal Code.

## DISCUSSION

Garcia identifies three issues on appeal: (1) failure to instruct on involuntary manslaughter, (2) insufficient evidence of a criminal gang's primary activity, and (3) incorrect calculation of custody credits. As to this last issue, Garcia claims he is entitled to an extra day of credit.

## I.        Involuntary Manslaughter Instruction[4]

Garcia argues that his killing Hernandez during an assault with a deadly weapon but without an intent to kill or conscious disregard for life was involuntary manslaughter, and he was thus entitled to a jury instruction on this lesser included offense. We review an assertion of the trial court's failure to instruct on a lesser included offence de novo. (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30 (*Brothers*).)

"The elements of murder are an unlawful killing committed with malice aforethought. [Citation.] The lesser included offense of manslaughter does not include the element of malice, which distinguishes it from the greater offense of murder. [Citation.] One commits involuntary manslaughter either by committing 'an unlawful act, not amounting to felony'[5] or by committing 'a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.'[6] [Citation.] If the evidence presents a material issue of whether a killing was committed without malice, and if there is substantial evidence the defendant committed involuntary manslaughter,

---

[4]        Garcia's main argument on this issue consists of large chunks of Justice Kennard's concurring opinion in *People v. Bryant* (2013) 56 Cal.4th 959, 971-975, reproduced nearly verbatim and without attribution. There is a substantial difference between relying on precedent and plagiarism. Garcia does *not*, it should be noted, agree with Justice Kennard that her analysis of involuntary manslaughter is not a general principle of law warranting a sua sponte instruction. (*Id.* at p. 975 (conc. opn. of Kennard, J.).)

[5]        Section 192, subdivision (b), was amended effective January 1, 2015, to read "not amounting to a felony."

[6]        Section 192 provides in pertinent part: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] . . . [¶] (b) Involuntary – in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

failing to instruct on involuntary manslaughter would violate the defendant's constitutional right to have the jury determine every material issue. [Citation.] Malice is implied, however, when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [Citation.]" (*People v. Cook* (2006) 39 Cal.4th 566, 596 (*Cook*).) "'[W]here the defendant realizes and then acts in total disregard of the danger, the defendant is guilty of murder based on implied malice. [Citation.]' [Citations.]" (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1027.) "Thus the pivotal question here was whether there was sufficient evidence for a reasonable juror to find [the defendant] acted without consciously realizing the risk to [the victim's] life." (*People v. Evers* (1992) 10 Cal.App.4th 588, 596.)

In *Cook*, *supra,* the defendant argued the trial court erred in failing to instruct the jury on involuntary manslaughter sua sponte. The Supreme Court held that the evidence did not raise a material issue as to the defendant's malice, and therefore the trial court was not obliged to instruct on involuntary manslaughter. Moreover, the jury having convicted the defendant of first degree murder, the defendant was not prejudiced by the lack of an involuntary manslaughter instruction. The jury necessarily resolved the issue of malice against the defendant. (*Cook, supra,* 39 Cal.4th at pp. 596-597; see *People v. Manriquez* (2005) 37 Cal.4th 547, 587-588 (*Manriquez*) [court not obligated to instruct on involuntary manslaughter unless substantial evidence of elements].)

The possibility of a jury instruction for involuntary manslaughter arose once in this case, when defense counsel stated: "And I, of course, Your Honor, would be asking to add a voluntary manslaughter there with that [i.e., instructions for first- and second-degree murder]. And I was also going to be asking for an involuntary manslaughter instruction based on [Garcia's] statement in his interview that he didn't

5

mean to [kill Hernandez]." [7]  Whereupon the trial court asked, pointedly, "But did [Garcia] say he meant to shoot [Hernandez]?"  Defense counsel undertook to review Garcia's confession, and suggested "we can come back to that." [8]  The subject did not come up again, as defense counsel pushed for a voluntary manslaughter instruction over the course of two days.

No substantial evidence supported a sua sponte involuntary manslaughter instruction.  The evidence showed Garcia shot Hernandez as he was running away; Hernandez fell and regained his feet, while Garcia continued to shoot at him.  "[H]e continued shooting the victim as the victim was falling to the ground." (*Manriquez, supra,* 37 Cal.4th at p. 588.)

Garcia's remark that he "didn't mean to," even assuming it meant he did not mean to kill Hernandez, does not support an involuntary manslaughter instruction.  Intent to kill is an element of express malice.  (§ 188.)  It does not negate implied malice.  "[W]hen, as here, the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no *sua sponte* duty to instruct on involuntary manslaughter." (*Brothers, supra,* 236 Cal.App.4th at p. 35, italics added.)  A lack of malice is a prerequisite of a verdict of involuntary manslaughter.  (§ 192, subd. (b).)  There was no evidence upon which a rational trier of fact could have based a finding that Garcia was unaware of the danger to Hernandez's life posed by shooting at him several times.

---

[7]  While he was describing the events that let up to the shooting, Garcia said, "But I didn't mean to man.  It just . . .'"  He also said he "overreacted" to Hernandez's disparaging comments about Garcia's gang.

[8]  Defense counsel also mentioned involuntary manslaughter in connection with an earlier motion to dismiss the first-degree murder charge under section 1118.  On appeal, Garcia asserted several times that his counsel *asked* for an instruction on involuntary manslaughter.

The evidence strongly supported the jury's implied finding that Garcia had acted with malice, that is, with knowledge of danger to and a conscious disregard of Hernandez's life. Garcia was not entitled to a sua sponte instruction on involuntary manslaughter.

## II.          Evidence of Primary Gang Activity

Garcia asserts that insufficient evidence supports the criminal street gang enhancement of section 186.22, subdivision (b).[9] Before we set aside a verdict for insufficient evidence, the defendant must demonstrate that "'"'upon no hypothesis whatever is there sufficient evidence to support [the conviction]." [Citation.]' [Citation.]" (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 610.)

The People called Sergeant Christopher Hamilton as its gang expert. Sergeant Hamilton testified that North Side Indio, the gang that Garcia "backed up," was a criminal street gang. He recounted the gang's history, how it originated in the 1980s with the amalgamation of two smaller local gangs involved in drug sales. He explained that gangs usually began with smaller crimes, such as vandalism and petty thefts, and graduated to more severe crimes as gang members rotate through the criminal justice system. North Side Indio, he testified, evolved over the years up to "the point where they're committing all types of crimes, all the way up to carjacking, murder, robbery." He identified North Side Indio gang members who had been convicted of assault with a deadly weapon with a gang enhancement, robbery with a gang enhancement, or possession of a firearm with a gang enhancement. He also responded "yes" to the

---

[9]          Section 186.22, subdivision (b)(1) provides: "Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows: [¶] (A) Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion. [¶] (B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years. [¶] (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years."

7

prosecutor's question, "And did North Side Indio, the active participants in it, did they – were they engaged – were their primary activities – I'm sorry – the commission of any of the criminal acts listed in . . . section 186.22, subdivision (e) as in Edward?"[10]

Garcia asserts that the prosecutor did not ask Sergeant Hamilton the right question, namely whether assault, robbery, and firearm possession (the crimes for which the other gang members had been convicted) were North Side Indio's "primary activities." Had the prosecutor asked that question, Garcia argued, the answer would have constituted substantial evidence of the primary activities element of the gang enhancement.

Garcia overlooks Sergeant Hamilton's earlier testimony regarding North Side Indio's activities. He testified that as a mature gang North Side Indio engages in, among other crimes, carjacking, murder, and robbery, all of which qualify as contributing to a "pattern of criminal activity." (§ 186.22, subd. (e)(2), (3), (21).) This testimony provides substantial evidence of North Side Indio's "primary activities." Garcia does not challenge any other aspect of the gang enhancement statute.

## III.     Extra Day of PreSentence Custody Credit

According to the record before us, Garcia went to jail on March 11, 2009, after the walkthrough at the crime scene. He was sentenced on March 21, 2014. The court awarded Garcia 1,837 presentencing credits for "actual time in custody."

Garcia argues that he is entitled to an extra day of credit because he was actually arrested on March 10. These credits are for presentencing *incarceration*; the

_____

[10]     Section 186.22, subdivision (e), lists 33 crimes as eligible for consideration as evidence of a "pattern of criminal gang activity." Numbers 26 through 30 refer to crimes associated with identity theft, such as "[u]nlawful use of personal identifying information to obtain credit, goods, services, or medical information . . . ." (§ 186.22, subd. (e)(29.)

Section 186.22, subdivision (f) provides: "As used in this chapter, 'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

relevant date is the one on which he went to jail.[11] There was no evidence in the record that Garcia was placed in jail between the time his interview ended, at approximately 11:20 p.m. on March 10, and the time he left the police station to do the walkthrough on March 11, at 1:40 a.m.

As the court explained in *People v. Macklem* (2007) 149 Cal.App.4th 674, the term "custody" has a different meaning when applied to presentencing credits than it has with reference to when a person's right to *Miranda*[12] warnings begins. (*Id.* at p. 694.) Section 2900.5 is intended to give defendants credit for time served in some form of jail or jail-like setting. (*Ibid.*) The calculation does not start until the defendant is in jail.

Garcia cites a string of appellate court decisions that ostensibly mark the beginning of the presentencing calculation from the defendant's "arrest." In three of these cases, however, it is clear that the defendant was arrested and put in jail on the same day. (See *People v. Kennedy* (2012) 209 Cal.App.4th 385, 390; *People v. Heard* (1993) 18 Cal.App.4th 1025, 1027; *In re Pollock* (1978) 80 Cal.App.3d 779, 781, overruled in *In re Rojas* (1979) 23 Cal.3d 152.) None of the other cases indicates that the defendant was arrested on one day and booked and jailed on a different day. From the record before us, the calculation of presentencing credits was correctly performed.

---

[11] Section 2009.5, subdivision (a), provides in pertinent part: "In all felony and misdemeanor convictions . . .,when the defendant has been in custody, including, but not limited to, any time spent in *jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility or similar residential institution,* all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served (italics added)."

[12] *Miranda v. Arizona* (1966) 384 U.S. 436.

## DISPOSITION

The judgment and sentence are affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

IKOLA, J.