Filed 11/18/20  P. v. Utuy CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RICARDO UTUY,<br><br>  Defendant and Appellant. | 2d Crim. No. B301574<br>(Super. Ct. No. BA451497)<br>(Los Angeles County) |

Ricardo Utuy appeals a judgment following conviction of first degree murder (count 1), and willful, deliberate, and premeditated attempted murder (count 2), with findings that he personally used a deadly weapon during commission of both crimes, and personally inflicted great bodily injury regarding count 2.  (Pen. Code, §§ 187, subd. (a), 189, 664, subd. (a), 12022, subd. (b)(1), 12022.7, subd. (a).)[1]  We modify the judgment to

---

[1] All statutory references are to the Penal Code unless otherwise stated.

award Utuy an additional 34 days of presentence custody credit, but otherwise affirm.

This appeal concerns the murder of a three-year-old child in Utuy's workplace and the attempted murder of another coworker several weeks earlier. Utuy used a knife to commit each crime. He surrendered to police officers following the murder of the child, admitted the crimes, and described a longtime methamphetamine addiction. He now raises arguments of evidentiary and instructional error, as well as the miscalculation of presentence custody credit. We order an award of additional custody credit, but find no merit to the remaining arguments.

## FACTUAL AND PROCEDURAL HISTORY

### Murder of R.V. (Count 1)

On October 31, 2016, Utuy was employed at a clothing factory in Los Angeles. Maria R. and Javier V. were also employed at the factory and their workstations were near Utuy's workstation. In the late afternoons, Javier V. and Maria R. would bring their three-year-old daughter R.V. to the factory following daycare.

As usual, Javier V. brought R.V. to the factory that afternoon. She walked between her parents' workstations, giving them cookies. As R.V. walked near Utuy's workstation, he stood up and followed her. Utuy then stabbed R.V. three times with a pocketknife before he fled the factory. R.V. died from her stab wounds, each of which was fatal. Neither Javier V. nor Maria R. had any disagreements with Utuy, nor had they ever had a conversation with him.

2

*Attempted Murder of Maria C. (Count 2)*

In 2016, Utuy was employed at another clothing factory in Los Angeles. Maria C., a coworker, sat at a nearby workstation. In the morning of October 10, 2016, Maria C. walked to the restroom. As she opened the restroom door, Utuy approached her and thrust a knife toward her abdomen. Maria C. deflected the knife with her forearm, causing the blade to penetrate her arm. Utuy asked Maria C. why she had criticized him, then he fled to the street.

The knife blade was embedded in Maria C.'s forearm, but removed at the hospital. Maria C. was unable to explain why Utuy had stabbed her because she had never socialized with him and only briefly interacted with him once during a meal break. By the time of trial, Maria C. continued to experience pain and she was unable to grasp objects with her hand.

*Utuy's Surrender*

Utuy appeared at the police station later that evening and provided a handgun and a folding knife to police officers. Through a Spanish-language translator, Utuy stated that he had killed a child because voices so instructed him. At trial, the parties stipulated that the bloodstains on the knife blade matched the DNA of R.V. Laboratory testing of Utuy's urine sample revealed the presence of amphetamine and methamphetamine.

*Utuy's Trial Testimony*

Utuy testified that he stabbed Maria C. because voices so encouraged him. He admitted that he brought a knife to the workplace that day for the purpose of attacking her. Utuy stated that he used methamphetamine six times that day, including twice before stabbing Maria C.

3

Utuy also testified that he used methamphetamine four times prior to stabbing R.V. He described voices stating that Javier V. was sacrificing his child to Utuy and other voices threatened Utuy's children if he did not kill R.V. Utuy admitted that he purchased a knife to kill R.V. and brought it to work for that purpose. He stated that he wanted R.V. to die when he stabbed her.

Utuy stated that following the stabbing, he appeared at the police station and surrendered a handgun and the knife he used to stab R.V. He was under the influence of methamphetamine at the time, having used it again following the stabbing.

Utuy described a frequent and longtime methamphetamine addiction, including daily at his workplace. He testified that after some years of frequent methamphetamine use, he began to hear voices and see imaginary people. Utuy stated that he was hospitalized twice for his addiction and was struck by a train because voices commanded him to stand on the railroad tracks. Upon his release from the hospital, Utuy returned to the railroad tracks and laid down. An onrushing train stopped and Utuy was returned to the hospital.

Utuy acknowledged that he refused methamphetamine addiction counseling and medication. He admitted that he threatened to assault a social worker who offered him addiction counseling, treatment, and services.

*Other Defense Evidence*

Utuy's girlfriend testified that he used drugs and stated that he heard voices. She added that he lost custody of their children because he refused drug treatment.

Professor Ettie Rosenberg, a licensed pharmacist and professor of pharmacy, testified regarding the effects of prolonged

4

and chronic methamphetamine use. She described mental symptoms of paranoia, delusions, psychosis, and hallucinations, as well as physical symptoms that could result in unpredictable violent and aggressive behavior.

*Conviction, Sentencing, Appeal*

The trial court sentenced Utuy to a prison term of 37 years to life, including 25 years to life for the first degree murder, one year for the deadly weapon finding, and seven years to life for the attempted willful, deliberate, and premeditated murder. The court also imposed various fines and fees, ordered restitution, and awarded Utuy 1,033 days of presentence custody credit.

Utuy appeals and contends that the trial court erred by: 1) admitting evidence of Exhibit No. 7, a three-inch by five-inch ordinary photograph of R.V.; 2) refusing to instruct regarding involuntary manslaughter based upon assault; and 3) miscalculating his presentence custody credit. He asserts that these errors denied him due process of law.

*DISCUSSION*

*I.*

Utuy argues that the trial court abused its discretion by admitting into evidence a family photograph of three-year-old R.V. He asserts that the error was prejudicial and denied him due process of law because the photograph engendered sympathy for the child and influenced the jury's rejection of his defense that methamphetamine psychosis caused R.V.'s murder.

Over defense objection of undue prejudice, the trial court admitted the small photograph into evidence as relevant to reflect R.V.'s height and basic stature. The court expressly found that the single photograph was not unduly prejudicial. At trial, Javier V. identified R.V. from the photograph and the questioning

5

encompassed eight lines of transcript.  In other evidence, the deputy medical examiner who performed the autopsy on R.V.'s body identified her wounds from seven autopsy photographs.

Whether the trial court erred in admitting into evidence a challenged photograph of the murder victim depends upon whether the photograph of the child alive is relevant and its probative value outweighs any substantial prejudicial effect. (Evid. Code, § 352; *People v. Morales* (2020) 10 Cal.5th 76, 103.) We review the trial court's decision to admit evidence of a photograph for an abuse of discretion.  (*Ibid.*)  We will not disturb the court's exercise of that discretion unless the probative value of the photograph "clearly is outweighed" by its prejudicial effect. (*Ibid.*)

Moreover, the prosecutor is not required to stipulate to the identity of the victim.  (*People v. Morales*, *supra*, 10 Cal.5th 76, 104.)  A photograph is not irrelevant or inadmissible simply because it duplicates testimony, depicts uncontested facts, or triggers an offer to stipulate.  (*Ibid.* [citing long-established precedent that the prosecutor need not accept "antiseptic stipulations" in lieu of photographs].)

The trial court did not abuse its discretion when it found that the probative value of the unremarkable photograph outweighed its prejudicial effect.  The photograph was not graphic or disturbing and served to identify R.V. as Javier V.'s daughter and provide context to the medical examiner's explanation of R.V.'s fatal injuries.  (*People v. Morales*, *supra*, 10 Cal.5th 76, 103.)  Relevant victim photographs are not inadmissible if they do no more than accurately portray the sometimes shocking nature of the charged crimes.  (*Id.* at p. 104.)

6

An objection to photographic evidence on the grounds of due process of law must be made at trial to preserve the issue on appeal. (*People v. Fayed* (2020) 9 Cal.5th 147, 196-197 [defendant failed to object to family photographs of murder victim on grounds of relevance]; *People v. Riggs* (2008) 44 Cal.4th 248, 292 [distinct federal due process claim must first be raised in trial court].) Utuy has forfeited this particular argument on appeal. (*Fayed*, at p. 197.) Forfeiture aside, his constitutional challenge fails because the trial court did not abuse its discretion in admitting the photograph. (*People v. Morales*, *supra*, 10 Cal.5th 76, 105.)

## II.

Utuy contends that the trial court erred by refusing an instruction concerning involuntary manslaughter based upon misdemeanor or felony assault with a deadly weapon resulting in death. (*People v. Brothers* (2015) 236 Cal.App.4th 24, 33-34 [instruction on involuntary manslaughter required where jury could entertain reasonable doubt that killing was accomplished with implied malice during course of inherently dangerous assaultive felony].) He asserts that his methamphetamine intoxication negated malice aforethought. Utuy argues that the prejudicial error denied him due process of law and the right to a jury trial pursuant to the state and federal constitutions.

In criminal cases, the trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary to the jury's understanding of the case. (*People v. Nelson* (2016) 1 Cal.5th 513, 538; *People v. Enraca* (2012) 53 Cal.4th 735, 759.) The evidence necessary to support a lesser included offense instruction must be substantial evidence from which reasonable jurors could conclude that the facts underlying

7

the instruction exist.  (*Ibid.*; *People v. Breverman* (1998) 19 Cal.4th 142, 154 [lesser included offense instruction not required where no evidence that offense less than that charged].)  The substantial evidence requirement is not satisfied by any evidence, no matter how weak, but evidence from which a jury could conclude that the lesser offense, but not the greater, was committed.  (*Nelson*, at p. 538.)  We independently review whether the trial court should have instructed concerning a lesser included offense.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)  "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that . . . is however predominantly legal.  As such it should be examined without deference."  (*Ibid.*)  Doubts regarding the sufficiency of evidence to warrant a lesser included offense instruction, however, must be resolved in favor of the defendant.  (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

The trial court was not required to instruct regarding involuntary manslaughter because there was no evidence that Utuy's acts were unintentional or negligent.  Utuy testified that he stabbed R.V. to kill her and that he brought a knife with him to work that day for that purpose.  He acknowledged that each stab wound was meant to accomplish the child's death.  Utuy surrendered to police officers later that evening, provided the knife, and admitted killing R.V.

In any event, the jury found that Utuy acted with the necessary premeditation required for first degree murder.  Any error in refusing an involuntary manslaughter instruction is harmless pursuant to any standard of review.

Failure to instruct with an instruction on a lesser included offense that is not supported by sufficient evidence does not

8

constitute fundamental unfairness or loss of verdict reliability pursuant to the federal or state constitutions. (*People v. Holloway* (2004) 33 Cal.4th 96, 141.)

Moreover, to the extent Utuy argues that he lacked the capacity to act with premeditation or malice, the diminished capacity defense is no longer available. Section 25, subdivision (a) eliminates the defense of diminished capacity: "The defense of diminished capacity is hereby abolished. In a criminal action . . . evidence concerning an accused person's intoxication . . . shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged." (See also § 28, subd. (b) ["As a matter of public policy there shall be no defense of diminished capacity . . . ."].)

## III.

Utuy asserts that he is entitled to an additional 34 days of presentence custody credit, for a total of 1,067 days. The Attorney General concedes. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48 [calculation of custody credit commences on day of arrest and continues through day of sentencing].)

## DISPOSITION

We modify the judgment to award Utuy an additional 34 days of presentence custody credit, for a total of 1,067 days. The trial court shall prepare an amended abstract of judgment

accordingly and forward the amended abstract to the Department of Corrections and Rehabilitation.  We otherwise affirm.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:



YEGAN, J.



PERREN, J.

10

Eleanor J. Hunter, Judge

Superior Court County of Los Angeles

_____

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.