Filed 11/20/25  P. v. Burnett CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064455 |
| v. | (Super. Ct. No. 23NF1740) |
| EFFRUM MALAND BURNETT, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge. Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric V.

Tran and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

This appeal stems from Effrum Maland Burnett's conviction for second degree murder following a jury trial. The trial court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter. Burnett contends the trial court erred in not instructing the jury on the lesser included offense of involuntary manslaughter. We disagree.

The evidence demonstrated that on the day of the incident, Burnett and Toye Jones, the victim, engaged in two fights outside of a sober living home. Jones stopped the first fight but then the two continued fighting down the street. During that second fight, Burnett took out a knife and stabbed Jones five times, including one fatal wound through the heart and another stab wound to the groin that would also have been fatal without immediate medical attention. There was no evidence in the record from which the jury could conclude that Burnett did not subjectively believe his stabbing of Jones would result in anything other than Jones's death. The trial court, therefore, did not err by failing to instruct on involuntary manslaughter and we affirm the judgment.

FACTS

In July 2023, Burnett and a female companion drove to a sober living facility in Anaheim where Jones was living. A witness testified that the female told Burnett that Jones had recently drugged her, held her against her will, and sexually assaulted her. When Burnett arrived, a resident inside the house told Jones the female was making allegations about him; Jones then ran outside. Once outside, Jones yelled at the female and hit her. Burnett intervened and then Jones and Burnett started fighting. Jones

2

stopped the fight and said, "'Not in front of my house. Go down the street.'" Jones went into the house briefly but then followed behind Burnett who was already walking down the street. A video introduced at trial shows "Burnett's right hand remained in his pocket as he was walking."

The witness testified as the two walked, Jones charged Burnett and punched him while Burnett was not looking. Burnett then proceeded to hit Jones five or six times in an uppercut fashion; the motion appeared as if he was using a knife. After about 15 or 20 seconds, Jones backed away, said he was done, and started walking back to the sober living home. Burnett watched Jones walk away holding his left arm against his side with his right arm. Video surveillance from the area showed Burnett walking with a knife in his right hand. The witness said Burnett ran to the car; he climbed into the backseat and said, "'He hit me good,' and 'Get out of here. Drive, drive, drive.'"

By the time police arrived, Jones was nonresponsive and lying in a large pool of blood. He was pronounced dead a short while later.

An autopsy was conducted, and it was determined Jones suffered five stab wounds. One was to his jaw which was not life threatening because the knife had hit his mandible bone. There was a stab wound to Jones's left armpit which had the potential to be life threatening, but was not in this case because the knife did not reach into the chest cavity. The third stab wound was to the left chest area and went into Jones's heart. This wound was life threatening. There was a fourth stab wound to Jones's left abdomen which was not life threatening and another to his right groin area. The stab to the groin area could have caused Jones to bleed out if he did not receive immediate medical attention. The cause of death was sharp force injuries to Jones's face, torso, and right groin.

In an information, Burnett was charged with one count of murder (Pen. Code, § 187, subd. (a); count 1) and an allegation that he personally used a deadly weapon in the commission of that murder (*id.*, § 12022, subd. (b)(1)). It was further alleged that Burnett had two prior strike convictions (*id.*, §§ 667, subds. (d) & (e)(2)(A), 1170.12, subds. (b) & (c)(2)(A)) and a prior serious felony (*id.*, § 667, subd. (a)(1)).

Burnett's case proceeded to a jury trial in which the trial court instructed the jury, as relevant here, on the elements of first degree murder, second degree murder, and voluntary manslaughter. Following deliberation, the jury returned a guilty verdict on second degree murder and a true finding as to the personal use of a deadly weapon allegation. Burnett admitted the prior strike and prior serious felony convictions. The court sentenced Burnett to an indeterminate term of 45 years to life, plus a determinate term of one year to be served consecutively to the indeterminate term.

DISCUSSION

Burnett's sole contention on appeal is that the trial court erred in not instructing the jury on the lesser included offense of involuntary manslaughter. A trial court has a sua sponte duty to do so, but only if substantial evidence warrants the instruction. (*People v. Simon* (2016) 1 Cal.5th 98, 132 (*Simon*).) Here, as we explain, there was no such evidence and the trial court correctly did not instruct on the offense.

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (Pen. Code, § 187, subd. (a).) "[M]alice may be express or implied. [¶] [It] is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (*Id.*, § 188, subd. (a)(1).) It is implied "when no considerable provocation appears, or when the

4

circumstances attending the killing show an abandoned and malignant heart." (*Id.*, subd. (a)(2).)

"Manslaughter is the unlawful killing of a human being without malice." (Pen. Code, § 192.) "Voluntary manslaughter is 'the unlawful killing of a human being without malice' 'upon a sudden quarrel or heat of passion.'" (*People v. Thomas* (2012) 53 Cal.4th 771, 813 (*Thomas*).) Involuntary manslaughter is a killing committed without malice and without an "aware[ness] of the risk to life that [the defendant's] actions created and [a] conscious[] disregard[of that] risk." (*People v. Odell* (2023) 92 Cal.App.5th 307, 321.) Involuntary manslaughter is a lesser included offense of murder. (*Thomas, supra*, 53 Cal.4th at p. 813.)

"A trial court has a sua sponte duty to instruct the jury on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser, offense. [Citation.] Substantial evidence is evidence from which a jury could conclude beyond a reasonable doubt that the lesser offense was committed. [Citations.] Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*Simon, supra*, 1 Cal.5th at p. 132.) We review de novo a trial court's decision not to instruct on a lesser included offense. (*Id.* at p. 133.)

Here, Burnett contends that because only one stab wound was fatal "[a] reasonable juror under [those] circumstances could have rationally inferred that [he] only believed that his conduct would leave Jones with injuries, but not that it would result in his death. Consequently, substantial evidence supported the instruction." However, Burnett points to no evidence in the record on which a juror could have relied to conclude that Burnett did not subjectively appreciate the danger to Jones's life which his conduct posed.

5

Instead, Burnett asserts that "the record lacks details surrounding the homicide and [his] conduct right at the time of the stabbing . . . ." Even accepting Burnett's recitation of the record as true, such lack of detail amounts to nothing more than a lack of proof—which is insufficient to warrant the instruction. (*People v. Kraft* (2000) 23 Cal.4th 978, 1063 ["if there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than charged, such instructions shall not be given"].)

In any event, from our review of the record, the evidence shows Burnett knowingly stabbed Jones five times, including multiple times to or near vital organs—once through the heart (the fatal wound), once to the face, and once in the groin, which could have caused Jones to bleed out. "[W]hen, as here, the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life . . . and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 35.)

## DISPOSITION

The judgment is affirmed.


                                    BANCROFT, J.*

WE CONCUR:


MOTOIKE, J., ACTING P. J.


SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.