Filed 7/21/16  P. v. Torres CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B262351 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA097414) |
| v. | |
| ARTURO TORRES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James D. Otto, Judge.  Affirmed.

Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Arturo Torres (defendant) challenges his second degree murder conviction on the basis of two instructional errors and prosecutorial misconduct. Because none of these arguments warrants reversal, we affirm his conviction and the resulting prison sentence of 16 years to life.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

In early November 2013, defendant went to a bar with four friends to watch an Oakland Raiders football game. When the game ended, they all went to an apartment to continue drinking. As they were hanging out in an alleyway behind the apartment, an African-American man walked by, displayed gang signs, and yelled racial slurs including "Fuck Mexicans," "Fuck Donkeys" and "Border Hoppers."

Defendant got angry, and he and another member of the group gave chase. Defendant was the faster runner and jumped someone. It was not the same person who had insulted the group, and the man pleaded with defendant, "Why me?" With the screwdriver defendant had been using to open beer cans, defendant stabbed the man three times with a "tremendous amount of force"—once through his rib, lung and heart; a second time through his lung; and a third time in his back, burying the five- or six-inch screwdriver blade to its handle. The man died.

After the stabbing, defendant told other members of the group that he "lost it" and told his girlfriend that he "picked" the guy with a "screwdriver." He also cut his long hair to avoid apprehension.

### II. Procedural History

The People charged defendant with first degree murder (Pen. Code, § 187, subd. (a)),[1] and alleged that he personally used a deadly weapon (§ 12022, subd. (b)(1)). The trial court instructed the jury on the crimes of first degree murder, second degree murder, and voluntary manslaughter based on provocation. The jury found defendant guilty of second degree murder and found the deadly weapon allegation true. The court

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

sentenced defendant to prison for 16 years to life—15 years to life on the murder count, plus an additional year for the deadly weapon finding.

Defendant timely appeals.

## DISCUSSION

### I. Instructional Errors

Defendant argues that the trial court committed two errors when instructing the jury: (1) The court did not on its own define the concepts of "mistake" and "accident" when explaining the provocation required for voluntary manslaughter; and (2) the court did not on its own give an instruction for the lesser-included offense of involuntary manslaughter. We independently assess whether the trial court committed these instructional errors. (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 850 (*Canizalez*) [de novo review of "a claim that the trial court failed to properly instruct the jury on the applicable principles of law"]; *People v. Cook* (2006) 39 Cal.4th 566, 596 (*Cook*) [de novo review of whether to instruct on lesser-included crimes].)

#### A. Defining "mistake" and "accident"

"'A trial court has a duty to instruct the jury "sua sponte on general principles which are closely and openly connected with the facts before the court."'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824; *People v. Cruz* (2008) 44 Cal.4th 636, 664 [noting trial court's duty to "instruct on general principles of law relevant to the issues raised by the evidence"].)

Voluntary manslaughter is "the unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) "The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim . . . or be conduct reasonably believed by the defendant to have been engaged in by the victim." (*People v. Lee* (1999) 20 Cal.4th 47, 59; *People v. Avila* (2009) 46 Cal.4th 680, 705; *People v. Trinh* (2014) 59 Cal.4th 216, 233.) In other words, voluntary manslaughter is available only if the defendant kills his provoker or if he kills "'the wrong person . . . by accident or mistake.'" (*People v. Spurlin* (1984)

3

156 Cal.App.3d 119, 126, superseded by statute on other grounds as stated in *People v. Coad* (1986) 181 Cal.App.3d 1094, 1106-1107.)

The trial court in this case instructed the jury using CALCRIM No. 570. Specifically, the court told the jury that a homicide constituted voluntary manslaughter "if the defendant killed someone because of a sudden quarrel or in the heat of passion. The defendant killed someone because of a sudden quarrel or in the heat of passion if: (1) The defendant was provoked; (2) As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; AND (3) The provocation would have caused a person of average disposition to act rashly and without due deliberation." The court's instructions did not specifically address from whom the provocation had to originate, and defendant admits on appeal that he did not ask the court to give a clarifying instruction on this point.

Defendant now argues that (1) the court was obligated to give a clarifying instruction on its own, and (2) his trial counsel was constitutionally ineffective for not requesting such a clarifying instruction. We reject both arguments.

To begin, the trial court was not required to define "mistake" or "accident" in the event a defendant kills someone other than the provoker because the standard CALCRIM No. 570 instruction did not specify that the provocation had to originate from anyone in particular. The instruction merely stated that voluntary manslaughter could apply if "the defendant killed someone because of a sudden quarrel or in the heat of passion." If anything, this instruction was too generous to the defendant because it did not require the jury to make *any* findings regarding whether the victim was the provoker or someone the defendant accidentally or mistakenly believed was the provoker. In any event, where a "standard instruction correctly and adequately explain[s] the applicable law to the jury," a court is "not required to rewrite it sua sponte" (*People v. Kelly* (1992) 1 Cal.4th 495, 535) and has "'no obligation to amplify or explain in the absence of a request'" (*People v. Ashmus* (1991) 54 Cal.3d 932, 997). Because defendant's trial counsel made no such request, he has forfeited this claim on appeal. (*People v. Souza* (2012) 54 Cal.4th 90, 118; *People v. Cole* (2004) 33 Cal.4th 1158, 1211.)

4

Nor was defendant's trial counsel constitutionally ineffective for not requesting a clarifying instruction. In evaluating whether a criminal defendant's counsel was constitutionally ineffective, we assess (1) whether "counsel's performance was deficient" and, if so, (2) whether, "but for counsel's unprofessional errors," "there is a reasonable probability" that "the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694 (*Strickland*).)

Defense counsel's performance was not deficient. Counsel's obligation to seek a clarifying instruction turns on whether the instruction was ambiguous and needed clarification in the first place. "When reviewing an instructional ambiguity claim, we ask whether the jury was reasonably likely to have construed the instruction in a manner that violated the defendant's rights." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1110; *People v. Williams* (2013) 56 Cal.4th 630, 689.) We do not, as defendant suggests, ask whether the instruction given definitively forecloses whatever theory the defense puts forth for the first time on appeal. In this case, there was no reasonable likelihood that the jury would have construed the CALCRIM No. 570 instruction to premise a verdict of voluntary manslaughter upon a finding that defendant either killed his provoker or someone he accidentally or mistakenly believed was his provoker. The text of the instruction was silent as to any link between the victim and the provoker; if anything, as noted above, that silence cut in defendant's favor by enabling the jury to return a verdict of voluntary manslaughter no matter who the victim was. Nor did the parties make it an issue. Defendant asserts that the prosecutor referred, in her rebuttal closing argument, to the fact that an "innocent person" was killed. But the prosecutor's comments responded to defendant's argument that he "thought [the victim] was the [person] who insulted him." More to the point, the prosecutor did not suggest that voluntary manslaughter was unavailable unless there was a finding that the defendant accidentally or mistakenly thought the victim was the provoker. Because the standard CALCRIM No. 570 instruction rendered the clarification defendant now seeks on appeal unnecessary, his trial counsel was not ineffective for not requesting that clarification. (Accord, *Canizalez*, *supra*, 197 Cal.App.4th at p. 857 [pinpoint instruction is "unnecessary" where "other

5

instructions adequately informed the jury of this point"]; *People v. Gurule* (2002) 28 Cal.4th 557, 660 [same].)

Citing *People v. Russell* (2006) 144 Cal.App.4th 1415, defendant argues that the instructions he now seeks on "accident" and "mistake of fact" are not clarifying instructions, but instead part of the "general principles of law" on which the trial court has a sua sponte duty to instruct. To be sure, *Russell* held that a trial court "has a sua sponte duty to instruct on mistake of fact if the defendant relies on the defense or if there is substantial evidence that supports the defense and the defense is not inconsistent with the defendant's theory of the case." (*Id.* at p. 1427.) But *Russell* is inapt for two reasons. By its own terms, *Russell* imposes a sua sponte duty to instruct on mistake of fact when *mistake of fact* is a defense to a crime. Here, defendant is not asserting mistake of fact *as a defense*; instead, he is asking the court to define the terms "mistake" and "accident" so as to preserve his ability to seek a voluntary manslaughter verdict when the victim was not the provoker. Even if *Russell* were somehow applicable, our Supreme Court overruled *Russell* a few years later in *People v. Anderson* (2011) 51 Cal.4th 989, 996-997, when it held that a trial court had no sua sponte duty to instruct on the defense of accident. (See also *People v. Lawson* (2013) 215 Cal.App.4th 108, 117-118 ["in the wake of *Anderson*,. . . *Russell* is apparently no longer good law to the extent it held that the trial court had a duty to instruct sua sponte on the defense of mistake of fact"].)

### B.     *Lesser-included crime of involuntary manslaughter*

As part of its duty to instruct the jury on generally applicable principles of law, a trial court may be required on its own to instruct the jury not only on the charged offenses, but also any lesser offenses that are necessarily included in each charged offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155.) The duty to instruct on lesser included offenses is triggered only "'where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense. [Citations.]'" (*People v. Whalen* (2013) 56 Cal.4th 1, 68, quoting *People v. DePriest* (2007) 42 Cal.4th 1, 50.) "[T]he 'substantial' evidence required . . . is not merely '*any* evidence . . . no matter how weak'

6

[citation], but rather "'evidence from which a jury composed of reasonable [persons] could . . . conclude[]'" that the lesser offense, but not the greater, was committed." (*People v. Cruz* (2008) 44 Cal.4th 636, 664.)  In assessing the substantiality of the evidence for these purposes, we view it in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

Defendant was charged with murder.  Murder is the "unlawful killing of a human being . . . with malice aforethought."  (§ 187, subd. (a).)  Both voluntary manslaughter and involuntary manslaughter are lesser-included offenses to murder.  (*People v. Thomas* (2012) 53 Cal.4th 771, 813.)  Both of these forms of manslaughter are statutorily defined as being "without malice."  (§ 192, subds. (a) & (b).)  However, with voluntary manslaughter, "the absence of malice . . . is theoretical, not factual"; that is because a defendant guilty of voluntary manslaughter certainly intended to kill his victim, but "'the malice is presumed to be wanting in a [killing resulting from a sudden quarrel or heat of passion upon sufficient provocation], the act "being rather imputed to the infirmity of human nature."'"  (*People v. Bobo* (1990) 229 Cal.App.3d 1417, 1440.)  By contrast, involuntary manslaughter is a killing without legal or factual malice.  It is defined as an "unlawful killing" committed "without due caution and circumspection" during the commission of an unlawful act (§ 192, subd. (b)), a misdemeanor (*ibid.*), a noninherently dangerous felony (*People v. Burroughs* (1984) 35 Cal.3d 824, 835), or an inherently dangerous assaultive felony (*People v. Brothers* (2015) 236 Cal.App.4th 24, 33-34 (*Brothers*).[2]  "'The words "without due caution and circumspection" refer to criminal negligence—unintentional conduct which is gross or reckless, amounting to a disregard of human life or an indifference to the consequences.'"  (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1027 (*Guillen*), citing *People v. Penny* (1955) 44 Cal.2d 861, 879.)

---

2      Killings in the course of inherently dangerous felonies that are not assaultive in nature are murder under the felony-murder doctrine.  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654 (*Gonzalez*).)  Assaultive felonies are excepted from the felony-murder doctrine because "the [assaultive] felony merges with the homicide."  (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.)

7

Whether the trial court was obligated to instruct the jury on involuntary manslaughter accordingly comes down to whether there was substantial evidence that defendant's killing was the product of criminal negligence (and thus the lesser offense of involuntary manslaughter), but *not* the product of the "express or implied malice" (and thus not the greater offense of murder). Malice "is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) "Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger." (*People v. Elmore* (2014) 59 Cal.4th 121, 133; § 188.) Implied malice consequently has two components: (1) an objective, "'physical component'" that "'is satisfied by the performance of "an act, the natural consequences of which are dangerous to life"'"; and (2) a subjective, "'mental component'" that "'the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life."'" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1220.) This mental component "may in many cases be inferred from the defendant's acts and the circumstances of the crime." (*People v. Smith* (2005) 37 Cal.4th 733, 741.) Thus, "when . . . [a] defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter." (*Brothers*, *supra*, 236 Cal.App.4th at p. 35.)

Here, there is no question that defendant's acts were objectively "dangerous to human life"—he stabbed his victim three times with a screwdriver and with such "tremendous force" that one of the blows cracked a rib.

There is also no material issue as to whether defendant subjectively appreciated the danger his conduct posed. Defendant points to his trial testimony, in which he states that he did not "mean to kill" the victim. However, this testimony establishes at most the absence of an intent to kill. Because "[i]mplied malice does not require an intent to kill"

8

(*Gonzalez, supra*, 54 Cal.4th at p. 653), this testimony is unhelpful in assessing whether defendant acted without implied malice.

Defendant also proffers his additional trial testimony that he did not "know what [he] did" and "wasn't thinking clearly about what [he] was doing." In *Brothers, supra*, 236 Cal.App.4th at pp. 34-35, a defendant's testimony that she "did not know 'this was going to happen'" was insufficient to create a material issue as to her subjective mental state warranting an involuntary manslaughter instruction. Here, the evidence of defendant's implied malice—and, more critically, the absence of any criminal negligence—is overwhelming. In his pretrial statement to police and elsewhere in his testimony, defendant admitted to knowing what he was doing and intending it: He stated he was "very angry," that he "wanted to hit [the insult hurler]," that he "just started to fight" once he caught up with the victim, that he "hit him," and that the screwdriver he used "didn't go in like a knife." Thereafter, defendant told a friend that he "lost it" and told his girlfriend that he "picked [the victim] with a screwdriver." On these facts, there is no material issue that defendant acted with implied malice, not due to negligence; substantial evidence did not support an involuntary manslaughter instruction. (Accord, *Cook, supra*, 39 Cal.4th at pp. 596-597 [defendant not entitled to involuntary manslaughter instruction after he "brutally beat [his victim] with a board"]; *Brothers*, at pp. 27-28, 34-35 [defendant not entitled to involuntary manslaughter instruction after she repeatedly beat her victim with a broomstick, burned him with cigarettes, and shoved a cloth gag down his throat]; *Guillen, supra*, 227 Cal.App.4th at pp. 1027-1028 [defendant not entitled to involuntary manslaughter instruction after he violently attacked victim].)

Defendant lastly proffers that "[j]abbing someone in the torso with a screwdriver is not unequivocally a manifestation of . . . a conscious disregard for life." To the extent he is urging this proposition we must follow as a matter of law, we disagree: stabbing a person not once, not twice, but three times with a five- or six-inch bladed screwdriver can indeed manifest a conscious disregard for life. On the facts of this case, it most certainly did.

9

Even if we were to ignore the weight of this precedent and conclude that the trial court erred in not instructing the jury on the crime of involuntary manslaughter, that error was both harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24), and not reasonably probable to have caused a more favorable result (*People v. Watson* (1956) 46 Cal.2d 818, 836) for the same reasons outlined above—namely, the evidence of defendant's implied malice was overwhelming.

## II.     Prosecutorial Misconduct

A prosecutor's conduct during a criminal trial violates the federal Constitution if it is "'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process'" and violates the California Constitution if it "involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'"" (*People v. Peoples* (2016) 62 Cal.4th 718, 792.)  We review a trial court's ruling on prosecutorial misconduct for an abuse of discretion.  (*Id.* at pp. 792-793.)

Defendant argues that the prosecutor in this case committed misconduct by misstating the law during her closing argument.  In her statement, the prosecutor accurately read the portion of CALCRIM No. 570 providing that "[i]n deciding whether the provocation was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than from judgment."  The prosecutor went on to argue, "What that means is would a reasonable person *have killed the individual*?"  The prosecutor later repeated this formulation of the issue.

As the People concede, the prosecutor's argument misstated the proper inquiry under the law.  In *People v. Beltran* (2013) 56 Cal.4th 935, 949 (*Beltran*), our Supreme Court rejected the argument that voluntary manslaughter turns on whether the provocation would prompt "an ordinary person of average disposition [to] *kill*."  Instead, the court held that provocation turns on whether the provocation would prompt a person of average disposition to "'act rashly and under the influence of such intense emotion that his judgment or reasoning process [would be] obscured.'"  (*Id.* at p. 956.)  In other words, "[t]he [proper] focus is on the provocation—the surrounding circumstances—and

10

whether it was sufficient to cause a reasonable person to act rashly. How the killer responded to the provocation and the reasonableness of the response is not relevant to sudden quarrel or heat of passion." (*People v. Najera* (2006) 138 Cal.App.4th 212, 223 (*Najera*).) Because the prosecutor argued that the jury should ask whether an average person in defendant's position would be moved to kill—instead of whether they would be moved to act rashly—the prosecutor misstated the law and thereby committed prosecutorial misconduct. (*People v. Cortez* (2016) 63 Cal.4th 101, 130 ["'it is improper for the prosecutor to misstate the law generally'"].)

We nevertheless conclude that this misconduct does not warrant a new trial for two reasons. First, defendant did not object to the prosecutor's argument or request an admonition to the jury, and this failure to object precludes us from granting him relief on appeal. (*Najera*, *supra*, 138 Cal.App.4th at p. 224 ["[t]o preserve for appeal a claim of prosecutorial misconduct, the defendant must make a timely objection at trial and request an admonition to the jury"].) Although a defendant is excused from this requirement where an objection would be futile (*ibid.*), there is no reason to believe it would have been futile here.

Second, defendant's alternative argument that his trial counsel was constitutionally ineffective for not objecting is without merit because defendant cannot establish either (1) deficient performance, or (2) prejudice. (*Strickland*, *supra*, 466 U.S. at pp. 687, 694.)

In evaluating whether counsel's performance was deficient, we are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland*, *supra*, 466 U.S. at p. 689.) "To prevail on a claim of ineffective assistance on appeal, ""'"the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission.""'"" (*People v. Cash* (2002) 28 Cal.4th 703, 734; accord, *Strickland*, at p. 689; cf. *People v. Pope* (1979) 23 Cal.3d 412, 426 [where a court cannot ascertain whether a decision was tactical, the issue should be left for review on habeas].) In this case, defense counsel elected to respond directly to the prosecutor's misstatement of the law, telling the jury that she got the law wrong and repeatedly advising the jury that it must focus on whether

11

"the reasonable person in this scenario, whether that person *would have reacted from passion rather than judgment*." A defense attorney's decision to respond to a prosecutor's improper argument, rather than object to it, is a tactical one. (See, e.g., *People v. Slaughter* (2002) 27 Cal.4th 1187, 1209-1210.)

Defendant also cannot establish that his counsel's failure to object prejudiced him because the jury was instructed—multiple times—that *the court's* recitation of the law trumped the attorneys' arguments about the law. We presume the jury followed this instruction in the absence of evidence to the contrary (*People v. Homick* (2012) 55 Cal.4th 816, 866-867), and here there was none. Consequently, "the court's instruction that the lawyers' opening and closing statements were not to be considered evidence by the jury vitiated the misleading effect of any inaccurate remarks." (*People v. Sanchez* (1995) 12 Cal.4th 1, 70, overruled on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390.) In *Beltran*, our Supreme Court held that a trial court's correct explanation of the law of voluntary manslaughter in response to a jury note cured any prejudice flowing from the prosecutor's argument erroneously focusing on whether the provocation would prompt a reasonable person to kill. (*Beltran*, *supra*, 56 Cal.4th at pp. 955-956.) Here, the court's jury instruction on voluntary manslaughter set forth the proper standard all along. In sum, no prejudice flowed from any deficiency in counsel's performance.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ

12