Filed 5/18/23  P. v. Ominsky CA2/1
Opinion following recall of remittitur

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL OMINSKY,<br><br>    Defendant and Appellant. | B312573<br><br>(Los Angeles County<br>Super. Ct. No. SA102236) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jeffrey W. Korn, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stacy Schwartz and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Daniel Ominsky of one count each of criminal threats (Pen. Code, § 422, subd. (a)),[1] felony vandalism (§ 594, subd. (a)), and attempting to dissuade a witness (§ 136.1, subd. (a)(2)).  The trial court imposed a suspended sentence of 16 months in prison and placed Ominsky on two years of probation, one of the terms of which was to serve 180 days in jail.  The court also imposed $2,905.23 in victim restitution, as well as several fines and assessments.

Ominsky contends that the trial court erred by failing to instruct the jury on the lesser-included offense of attempted criminal threats.  He also contends that his trial attorney rendered ineffective assistance by failing to contest the amount of restitution, which he claims should have been reduced by $300.  We conclude that any error in the jury instructions was harmless, and that Ominsky has failed to prove ineffective assistance of counsel.  Accordingly, we affirm.

## FACTS AND PROCEEDINGS BELOW

The enmity between Ominsky and Erick Paiz, Jr., dated to 2007, when Paiz testified in court about an incident in which a friend of Ominsky's stabbed Paiz.  Shortly thereafter, Ominsky began calling Paiz a snitch whenever he encountered him.  Ominsky's verbal attacks escalated in 2018 and 2019 to the point that Paiz found them intolerable.  One day in July 2019, Paiz confronted Ominsky in a park.  They threw punches at one another, and when Ominsky grabbed a knife he had concealed behind a park bench, Paiz picked up a chunk of concrete that had

_____

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

2

detached from the sidewalk.  Paiz hit Ominsky with the piece of concrete, knocking him to the ground, and walked away.  A few months later, Ominsky parked his car in front of Paiz's house, got out, flicked a lit cigarette at Paiz, and said, "when I see you on the streets I'm gonna get you."

The situation came to a head on the afternoon of December 9, 2019, when Paiz returned home from buying gas for use in his work as a welder and saw Ominsky parked across the street.  Paiz parked his father's van in the driveway and started unloading it.  Ominsky waved at Paiz and told him to come toward him, but Paiz replied, "You come over here."  Ominsky got out of his car, said that Paiz had disrespected him, and added, "Let's run it."  Paiz thought Ominsky wanted a fist fight and told Ominsky he was busy, but would fight him later.  Ominsky said, "Man, if I had a gun [I'd] shoot you."  Paiz laughed nervously and said, "It's cool."

Ominsky started walking toward Paiz and said, "Fuck it. I'm gonna stab you."  Ominsky pulled out a knife, and Paiz backed up toward the garage, which was at the back of the property, as quickly as he could while holding a welding tank.  Ominsky pointed the knife at Paiz.  Paiz kept moving backwards, believing that if he turned his back, Ominsky would stab him.  Paiz yelled at his father and a friend who were in the backyard, asking them for a weapon to use against Ominsky.  When he got their attention, he yelled that Ominsky "is in the front and he is for real trying to stab me."

When Ominsky reached the van, he stopped pursuing Paiz and began punching the passenger side of the vehicle.  Paiz saw Ominsky punch the windows of the van several times.  Ominsky

3

then turned to walk back toward his car, scratching the side panels of the van with his knife as he went.

Paiz made his way to the back yard. According to Paiz's father, Paiz looked "really scared." Paiz's father ran to the front of the house, where he saw Ominsky making a U-turn and driving away. Paiz grabbed a wrench and followed his father to the front yard, but by the time he got there, Ominsky was gone. Paiz's wife, Cristina Martinez, was pulling up to the property in her car just as Ominsky was leaving. Paiz's father told her to call the police, and she did so over Paiz's objection. Martinez described Paiz as appearing "pretty shooken [*sic*] up," and "a little pale."

Paiz's father took the van to a body shop, which gave him an estimate of $2,905.23. The bill included $2,605.23 to repair the scratches caused by the knife, and $300 to repair a dent on the side panel. Paiz and his father both testified that there had been no damage to that side of the vehicle before Ominsky attacked it.

Police officers arrested Ominsky almost two months later, on January 25, 2020, searched him, and found a knife in his pocket similar to the knife Paiz described. Martinez and Paiz's father both testified that they heard Ominsky outside their home two days later, on January 27. According to Martinez, Ominsky was parked outside of the house in his car. He yelled, "I'm going to kill you. I'm going to shoot you. I'm going to get you, you fuckin' snitch." He began making U-turns in the car, screeching his tires and burning rubber. He yelled, "I just got out of jail. I'm on bail, you fuckin' snitch. I'm going to get you. I'm going to shoot you." Paiz's father testified that Ominsky yelled, "I'm

gonna come and get you, you and your father.  I'll put a bullet in your head."[2]

## DISCUSSION

**A.    There Was No Prejudicial Error in the Trial Court's Failure to Instruct the Jury on Attempted Criminal Threat**

Ominsky contends his criminal threats conviction should be reversed because the trial court erred by failing to instruct the jury on attempted criminal threats, which he describes as a lesser included offense of criminal threats.[3]  We need not decide

---

[2] For his actions on January 27, 2020, after being released from jail, the People charged Ominsky with attempting to dissuade a witness.  The charge of criminal threats was based solely on his earlier actions on December 9, 2019.

[3] Courts, including our Supreme Court, have referred to attempted criminal threats as a "lesser included offense" of criminal threats, albeit without analysis.  (E.g., *People v. Chandler* (2014) 60 Cal.4th 508, 513; *People v. Toledo* (2001) 26 Cal.4th 221, 226; *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607.)  We assume for the purposes of this argument that this is correct.  If not, Ominsky would have no right to an instruction on the lesser offense.  (See *People v. Birks* (1998) 19 Cal.4th 108, 136 [defendant has no "unilateral entitlement to instructions on lesser offenses which are not necessarily included in the charge"].)  " 'Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 154, fn. 5.)  " 'An attempt to commit a crime consists of two

5

whether the trial court erred because Ominsky has failed to show that the lack of an instruction prejudiced him.

Ominsky did not request such an instruction, but "[t]he trial court has a duty to instruct the jury sua sponte on all lesser included offenses if there is substantial evidence from which a jury can reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater. [Citations.] The duty exists even when the lesser included offense is inconsistent with the defendant's own theory of the case and the defendant objects to the instruction. [Citations.] This instructional requirement ' "prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.

---

elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' As a consequence, when the completed offense is a general intent crime, an attempt to commit that offense does not meet the definition of a lesser included offense under the elements test because the attempted offense includes a specific intent element not included in the complete offense." (*People v. Ngo* (2014) 225 Cal.App.4th 126, 156, fn. omitted, quoting § 21a.) On the other hand, when the completed offense requires a specific intent, the definition of attempt "does not add a specific intent element not already included under the definition of the completed offense. Accordingly, the attempted crime is distinguished from the completed crime only by the failure to complete the actus reus, and the attempted offense is a lesser included offense under the elements test." (*Id.* at p. 157.) The completed offense of criminal threats includes one element involving specific intent. It requires "that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat.' " (*People v. Toledo*, *supra*, 26 Cal.4th at p. 228, quoting § 422.)

Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither 'harsher [n]or more lenient than the evidence merits.' " ' [Citations.]" (*People v. Brothers* (2015) 236 Cal.App.4th 24, 29-30.)

"We review the trial court's failure to instruct on a lesser included offense de novo [citations] considering the evidence in the light most favorable to the defendant." (*People v. Brothers*, *supra*, 236 Cal.App.4th at p. 30.) "[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and . . . is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 165.)

To prove a defendant guilty of making a criminal threat in violation of section 422, "the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo*, *supra*, 26 Cal.4th at pp. 227-228.)

7

"The crime of attempted criminal threat encompasses situations where a defendant intends to commit a criminal threat 'but is thwarted from completing the crime by some fortuity or unanticipated event.' [Citation.]" (*People v. Chandler*, *supra*, 60 Cal.4th at p. 515.) The fortuity or unanticipated event may take several forms, one of which occurs "if a defendant, . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*People v. Toledo*, *supra*, 26 Cal.4th at p. 231.)

Ominsky argues that the court was required to instruct the jury on attempted criminal threats because a reasonable jury could have found that Ominsky's threat did not cause Paiz to feel "sustained fear," as required by section 422, subdivision (a). According to Ominsky, Paiz was under threat from Ominsky only for a moment before Ominsky turned away and began vandalizing the van. In addition, Ominsky points out that shortly after the incident, Martinez told a 911 operator that Paiz was not hurt, "just a little shooken up," and claims that Paiz did not appear to be afraid during a police interview recorded about one-half hour[4] after the incident. He also notes that Paiz testified that he "didn't see a reason to" call the police after the

[4] The transcript of Martinez's 911 call, made just after Ominsky left Paiz's home, states that it was recorded at 3:11 p.m. The transcript of the police body camera video indicates that it was recorded at 3:42 p.m. the same day.

incident.  Finally, Ominsky points out that when the trial court denied his motion to dismiss the case for insufficient evidence, it expressed some skepticism as to whether the evidence showed that Paiz felt sustained fear.

We need not decide whether there was substantial evidence to support an instruction on attempted criminal threats because even if so, Ominsky has not shown he was prejudiced by the lack of an instruction.  It is true that the prosecution must show the victim felt fear for "a period of time that extends beyond what is momentary, fleeting, or transitory" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156), but this does not imply a great length of time.  " ' "Fifteen minutes of fear . . . is more than sufficient to constitute 'sustained' fear for purposes of . . .section 422." ' [Citation.]  Indeed, '[w]hen one believes he [or she] is about to die, a minute is longer than "momentary, fleeting, or transitory." ' [Citation.]" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634.)

Under this definition, the evidence was overwhelming that Paiz felt sustained fear as a result of Ominsky's threat.  Ominsky highlights the trial court's comment on the strength of the evidence of sustained fear, which came in the context of deciding Ominsky's motion under section 1118.1 to dismiss the case.  We are aware of no law indicating that we should defer to such comments while considering a separate legal issue (namely, whether there is a reasonable probability the jury would have convicted Ominsky of a lesser offense if the jury had been instructed on one).  Indeed, cases discussing the analysis of harmless error under *People v. Watson* (1956) 46 Cal.2d 818 make clear it is the responsibility of the "appellate court" to independently to review the evidence.  (See, e.g., *People v. Breverman*, *supra*, 19 Cal.4th at p. 177.)

With regard to the trial evidence, Paiz testified that he believed at the time that Ominsky was likely to stab him. His father testified that when Paiz reached the back yard, his skin was white and he appeared to be very afraid. Martinez testified that when she saw him shortly after Ominsky left, Paiz appeared "pretty shooken up," and "a little pale." The jury most likely would have interpreted Paiz's request that his wife not call the police not as a signal that he was unafraid, but rather as a reflection of Paiz's belief that it "is the worst to be known as a snitch." Because sustained fear need not have long duration, Paiz's apparent composure during his interview with police more than 30 minutes after the incident is of minimal relevance.

Given this evidence, Ominsky has not shown that "it is reasonably probable a more favorable result would have been obtained" had the court instructed the jury on attempted criminal threats. (*People v. Beltran* (2013) 56 Cal.4th 935, 955.) Here, "the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 177.)

## B. Ominsky Has Not Shown Ineffective Assistance of Counsel on the Issue of Restitution

At the sentencing hearing, Ominsky's attorney stipulated to $2,905.23 in victim restitution. This was based on the body shop's estimate of the cost to repair the van, which included $300 to repair a dent in the side panel, and $2,605.23 to repair the scratches from Ominsky's knife. Ominsky contends that there was no evidence that he caused the dent, and that his attorney rendered ineffective assistance of counsel by failing to request

10

that the court reduce the amount of restitution by $300.  We reject this claim because the record before us is insufficient to show that Ominsky's attorney acted unreasonably.

"To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) 'counsel's performance fell below a standard of reasonable competence' and (2) 'prejudice resulted.' (*People v. Anderson* (2001) 25 Cal.4th 543, 569 . . . ; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 . . . .)  Thus, '[e]ven where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that, " ' "but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " ' "  (*People v. Le* (2006) 136 Cal.App.4th 925, 935.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

This case demonstrates why a habeas petition is often preferable to a direct appeal for deciding a claim of ineffective assistance of counsel.  Most of the evidence at trial regarding

11

damage to the van focused on the scratches, and there was little testimony regarding the dent.  The prosecutor asked Paiz if he noticed any dents in the van that were not there before the incident, but Paiz answered that he did not concentrate on the condition of the van until later.  Paiz testified that he saw Ominsky hitting the van with his fists, but it is not clear whether Paiz saw Ominsky hit the van anywhere other than its windows.  Both Paiz and his father testified that there was no damage to the passenger side of the van before Ominsky punched and slashed it, but in both instances the witnesses were focused primarily on the scratches from the knife.

On the basis of the record before us, we cannot exclude the possibility that Ominsky did not cause the dent, and his attorney was deficient in failing to request a reduction in the amount of restitution.  But it is also possible that Ominsky did cause the dent when he was punching the van, and that his attorney chose not to challenge the amount of restitution because he knew it would be a futile exercise.  We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  (*People v. Maury* (2003) 30 Cal.4th 342, 389; accord, *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.)  Given the ambiguities in the testimony, the record before us is insufficient to overcome that presumption.

## DISPOSITION

The judgment of the trial court is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

CHANEY, J.

BENDIX, Acting P. J.

13