Filed 7/23/24  P. v. Young CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD YOUNG,<br><br>    Defendant and Appellant. | B330393<br>(Los Angeles County<br> Super. Ct. No. NA115456) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Richard Young repeatedly pushed, punched, and pistol whipped Juan Manuel Moreno before fatally shooting him at close range in the chest. Defendant was convicted by a jury of second degree murder, two counts of firearm possession by a felon, and fleeing a pursuing police vehicle while driving recklessly.

On appeal, defendant attacks all of his convictions. He contends the trial court prejudicially erred by refusing to instruct the jury on involuntary manslaughter as a lesser included offense of murder. Defendant also contends the prosecutor improperly elicited inadmissible testimony from an eyewitness that led to other evidentiary errors. In addition, he argues there was insufficient evidence to support the evading a peace officer conviction and the firearm possession by a felon conviction violates the Second Amendment. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### I. *Prosecution Evidence*[1]

#### a. *The Murder*

On August 4, 2020, at approximately 4:15 p.m., Shawn Vannoy was walking in an alley near Cerritos Avenue in Long Beach when he heard someone yelling, "You need to get out of here. You can't be doing that here." After Vannoy heard more yelling, he looked back and saw defendant repeatedly pushing and punching Moreno. Moreno put his hands up, trying to defend himself. Defendant then took out a pistol from his waist and started hitting Moreno with it. After Moreno fell to the ground, defendant stood over him and continued to hit him with the pistol. Moreno held his

---

[1] The defense did not call any witnesses.

2

hands up in an attempt to push defendant away from him. Moreno did not grab the pistol, and there was no struggle over it. A loud bang occurred and defendant moved away from Moreno. Vannoy said to defendant, "Dude, what the fuck." Defendant pointed the pistol at Vannoy and then ran down the alley.

Michael Sartor was walking on Cerritos Avenue when he saw defendant pushing Moreno in the alley and telling him to "get out of here." Sartor saw defendant repeatedly punch Moreno. After Moreno fell, defendant hit him in the head at least three times with a handgun. Sartor ducked for cover when he saw the gun, and he heard a gunshot a few seconds later. Sartor looked back into the alley and saw defendant point the gun at Vannoy. Defendant then put the gun away and left down the alley.

Moreno died from a gunshot wound to the middle of his chest, and soot around the entry wound indicated the gun muzzle was within two feet of the body at the time of discharge. Moreno also had a small abrasion on the left temple area which could have been caused by being hit by a blunt object.

Video recordings from several locations in the neighborhood showed defendant's movements immediately after the shooting. Video footage from a liquor store showed defendant inside the store, with the handle of a semiautomatic handgun protruding from his pocket.

b. *Evading a Police Officer*

On October 5, 2020, Long Beach Police Detective Justin Rivett and his partner Detective Barajas were conducting surveillance in the area of Seventh and Cherry Street in Long Beach in an effort to apprehend defendant. Both detectives were wearing black polo shirts with Long Beach Police Department patches, an embroidered badge, and outer ballistic vests

with "police" marked on the front and back. The detectives were in a Ford Explorer police vehicle but it did not have a police emblem on the outside. The vehicle was equipped with a siren, a forward-facing red light in the windshield (rather than a light bar on top of the vehicle), alternating headlights, and strobe lights (also known as "wig wag" headlights) in the grille.

During the surveillance, Detective Rivett was alerted by other officers that defendant was driving a tan Jaguar in the area. Detective Rivett saw the Jaguar and drove the police vehicle behind it. Detective Rivett then drove closer to the Jaguar and activated his vehicle's "lights and sirens" to conduct a traffic stop. Defendant did not stop. Instead, he continued driving at 30 to 40 miles per hour, failed to stop at several stop signs, and made many turns on adjacent residential streets. The police vehicle's "lights and sirens" remained activated during the entire pursuit.

At one point, defendant's Jaguar crashed into the passenger side of another vehicle. Defendant continued to drive with the police vehicle in pursuit. Defendant's Jaguar then collided with a parked vehicle. Defendant got out of his vehicle and ran.

Detective Rivett and his partner chased defendant on foot and commanded him to stop. Detective Rivett also identified himself as a police officer. Defendant, who was holding a black semiautomatic gun in his left hand, continued to run. Defendant then threw the gun as the police were in pursuit. The police subsequently detained defendant and recovered the gun.

c. *Firearm Evidence*

Criminalist Alexandra Lamay examined the recovered firearm, a nine-millimeter semi-automatic handgun. The gun was a "ghost gun," meaning

4

that it did not have a serial number.  Test firing of the gun showed that it was operating properly.  The gun did not misfire or fire without the trigger being pulled.  The pressure required to pull the gun's trigger was within normal range.

The parties stipulated that defendant had previously been convicted of a felony for purposes of the firearm possession by a felon charges.

II.    *The Trial*

On February 8, 2023, a jury found defendant guilty of second degree murder (Pen. Code, § 187, subd. (a))[2] and that he personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)).  The jury also found defendant guilty of two counts of firearm possession by a felon (§ 29800, subd. (a)(1)) and fleeing a pursuing peace officer's motor vehicle while driving recklessly (Veh. Code, § 2800.2).  The trial court sentenced defendant to 27 years to life in state prison.

Defendant timely appealed.

## DISCUSSION

I.    *Jury Instruction*

Defendant contends the trial court prejudicially erred in refusing his request for an involuntary manslaughter instruction, citing *People v. Brothers* (2015) 236 Cal.App.4th 24 (*Brothers*) [a defendant may be guilty of involuntary manslaughter when he kills without malice during an inherently

---

[2]    All further statutory references are to the Penal Code unless otherwise stated.

5

dangerous assaultive felony].)  Defendant argues his use of the firearm to hit Moreno supported such an instruction.  We find no error.[3]

The trial court is obligated to instruct on all general principles of law relevant to the issues raised by the evidence regardless of a defendant's formal request.  (*People v. Souza* (2012) 54 Cal.4th 90, 115.)  This includes instructions on lesser-included offenses if there is evidence that would absolve the defendant of guilt of the greater offense but not the lesser.  (*Id*. at p. 116.)  However, "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury.  [Citations.] 'Substantial evidence' in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]'" that the lesser offense, but not the greater, was committed."  (*People v. Breverman* (1998) 19 Cal.4th 142, 162, disapproved of on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237.)  Whether a reasonable jury could have so concluded based upon the evidence in this case is a matter we determine de novo.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1206, 1215.)

*Brothers* discussed the crime of involuntary manslaughter and held: "[A]n instruction on involuntary manslaughter as a lesser included offense must be given when a rational jury could entertain a reasonable doubt that an unlawful killing was accomplished with implied malice during the course of an inherently dangerous assaultive felony."  (236 Cal.App.4th at p. 34; see

---

[3]     We reject defendant's contention that assault with a deadly weapon (here, a firearm) is not inherently dangerous.  (*People v. Rhodes* (1989) 215 Cal.App.3d 470, 476, disapproved of on other grounds by *People v. Barton* (1995) 12 Cal.4th 186 ["[A]ssault with a deadly weapon is inherently dangerous due to the nature of the weapon or the degree of force"].)

also *People v. Thomas* (2012) 53 Cal.4th 771, 814 ["an accidental shooting that occurs while the defendant is brandishing a firearm . . . could be involuntary manslaughter"].) Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, and performed with conscious disregard for that danger. (§ 188; *People v. Elmore* (2014) 59 Cal.4th 121, 133.)

Here, a rational jury could not have had a reasonable doubt that defendant acted with implied malice. After Moreno was repeatedly pushed and punched by defendant, he fell to the ground. As defendant stood over Moreno, he struck him several times with his handgun before shooting Moreno in the chest. Based on soot around the entry wound, defendant's gun muzzle was within two feet of Moreno at the time of discharge. During the attack, Moreno held his hands up in defense but never reached for the gun. Expert witness evidence demonstrated that the gun was operating properly. The gun did not misfire or fire without the trigger being pulled. Moreover, the pressure required to pull the gun's trigger was within normal range. There was no evidence presented that defendant accidentally or unintentionally fired the gun. (*People v. Smith* (2021) 70 Cal.App.5th 298, 313 [rejecting claim that an involuntary manslaughter instruction was warranted because there was no showing that defendant's acts were accidental].) On appeal, defendant states that "Sartor believed the gun could misfire" but this statement was solely made to explain why he took cover when he saw the gun, not as to why the gun later fired. Therefore, we conclude that the trial court did not err in not instructing the jury on the lesser included offense of involuntary manslaughter as there is no substantial evidence to support giving that instruction.

II.   *Evidentiary Errors*

Defendant raises several evidentiary errors that arose from the prosecutor's alleged improper elicitation of inadmissible hearsay during Sartor's testimony. The following facts are relevant to address each of defendant's contentions.

A. *Relevant Background*

During his direct-examination, Sartor testified that he "ducked for cover" when he saw the handgun. A few questions later, the prosecutor asked, "Before you ducked, how many times would you say you saw the defendant hit the victim with the gun?" Sartor responded, "I want to say, at minimum, three. I didn't really duck until I saw the barrel." The prosecutor then inquired, "What was it about the barrel that made you duck?" Sartor stated, "Just knowing gun safety, you're not—you're not supposed to." Defense counsel interjected with an objection based on speculation and lack of foundation. The prosecutor said that Sartor was laying the foundation, and the trial court overruled the objection. When Sartor started to explain his personal experience with firearms, defense counsel objected on relevance grounds. The court overruled the objection and directed Sartor to describe his personal experience.

When Sartor started to speak, defense counsel objected again. The court allowed the prosecutor to continue, who then asked, "Do you have experience with guns in the past?" Sartor said he had fired a gun around four times in his life, and he took a test on gun safety when he purchased one. When the prosecutor asked if Sartor spoke with his friends about gun safety, he replied that he did. Defense counsel objected based on relevance, which was overruled by the court. The prosecutor then asked, "Based on your

8

experience with both taking the test and speaking with your friends regarding gun safety, what is it about seeing the barrel of the gun that caused you to duck?" Defense counsel objected based on lack of foundation and that Sartor is "being asked an expert opinion as a lay witness." The court responded, "No. He's being asked an opinion as to what caused him to duck. He can answer the question. Overruled." Sartor said, "Guns will discharge pretty easily, especially when dropped or hit against something. So when I saw that barrel . . . being swung against someone's head, I didn't want to be accidentally shot." Defense counsel objected for lack of foundation and moved to strike, which the court overruled.

Two court days later, defense counsel was told by the prosecutor that the criminalist Lamay, who was testifying the following day about defendant's firearm, had been asked to conduct an "extra examination on the gun and to produce a report." The prosecutor informed the court that she was going to have Lamay perform a "trigger pull analysis of the gun." When asked by the court for her offer of proof, the prosecutor replied that based on cross-examination of Sartor and Vannoy, "we may be heading into an accident area." The prosecutor noted Lamay had previously tested the gun but did not measure the trigger pull. She wanted to foreclose any possibility that the gun was prone to misfire or going off on its own. Defense counsel stated that Sartor's testimony about the gun misfiring was elicited on direct examination over her objection. The prosecutor responded that Sartor's testimony about the gun potentially going off "was a little editorial on his part," and she was not trying to elicit that statement from him. The court acknowledged that Sartor "volunteered it."

Defense counsel then stated that if Lamay's supplemental report "shows something that is contradictory to my theory of defense," she would be

9

entitled to have an expert review the report. The prosecutor said that Lamay already tested the firearm and concluded it was "operating properly." She wanted Lamay to undergo this new test in order "to show that it takes the pulling of a trigger to fire a gun, not just banging it around." The court stated it would not allow the report if it caused delay in the trial. The court believed the report might not be necessary for Lamay's testimony. "Ultimately, [Lamay] can talk about trigger pull without having measured it," even though she would have already done so. The court and the parties agreed to address the issue the next morning, after review of the report.

The next day, the court addressed the supplemental report that was prepared that morning by Lamay. Defense counsel objected to the report under section 1054 et seq.[4] as it was just presented to her. She stated she could not effectively cross-examine Lamay without first consulting an expert on the report and that she might want to present expert testimony. Defense counsel requested "either a mistrial or additional time so that [she could] consult with an expert" before Lamay's testimony. The court highlighted to defense counsel that she did not choose to hire her own firearms expert despite knowing there was a firearm involved in the murder. The court also stated that Stator's testimony about accidental firearm discharge was not elicited by the prosecutor but volunteered. The prosecutor confirmed she did not intend to elicit that testimony.

---

[4] "Section 1054 et seq. govern[s] discovery in criminal cases and aim[s] at flushing out the truth early and avoiding the element of surprise (on both sides) in criminal trials. '"The purpose of section 1054 et seq. is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. [Citation.]"'" (*People v. Hughes* (2020) 50 Cal.App.5th 257, 278.)

The court also found Sartor's testimony could not have been anticipated as no one knew his experience with guns on which he expressed a lay opinion that the "jury can take, for whatever it's worth." Defense counsel would have the opportunity to cross-examine the expert. Therefore, the court concluded Sartor's testimony was properly admitted, given the circumstances. The court then stated it would exclude the result of the "trigger pull" test but allow Lamay to testify the firearm had a "normal trigger pull" without attesting to the specifics. The court was not inclined to grant a mistrial because there was no prejudice to defendant that could not be rectified. After discussing jury instructions, defense counsel moved for a mistrial. The court denied the motion. Lamay testified that the pressure required to pull the trigger on the firearm was within normal range, which is usually between four to six pounds of pressure.

B. *Analysis*

As noted, Sartor testified that he ducked for cover when he saw the gun because, based on his personal experience, the gun could have accidentally gone off based on the way in which defendant was using it. On appeal, defendant contends the trial court abused its discretion in admitting this statement on the grounds it was irrelevant and improper lay opinion. We review a trial court's decision to admit evidence for abuse of discretion. (*People v. Young* (2019) 7 Cal.5th 905, 931.)

"'Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." [Citation.] "The test of relevance is whether the evidence tends, "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive."'" (*People v. Wilson* (2006) 38 Cal.4th

11

1237, 1245.)" (*People v. Gonzalez* (2021) 12 Cal.5th 367, 408.)  Testimony of a lay witness in the form of an opinion is limited to an opinion that is rationally based on the witness's perception and helpful to the clear understanding of the witness's testimony.  (Evid. Code, § 800.)  Here, Sartor's explanation for ducking for cover was relevant to show that defendant's use of the gun involved objectively dangerous conduct that exhibited a conscious disregard for human life.  As to lay opinion, Sartor's reasoning that guns can accidentally fire, especially in the way that defendant was handling the gun, was based on his own personal experience and perception.  The trial court aptly stated that the "jury can take, for whatever it's worth," and invited defense counsel to cross-examine Sartor.  Defense counsel elected not to cross-examine Sartor on this testimony.  Thus, we conclude Sartor's statement was relevant and admissible lay opinion, and there was no abuse of discretion in is admission.

Defendant further contends the prosecutor improperly elicited Sartor's inadmissible testimony (i.e., about guns going off accidentally). A prosecutor commits misconduct by intentionally eliciting inadmissible testimony. (*People v. Molano* (2019) 7 Cal.5th 620, 674; *People v. Tully* (2012) 54 Cal.4th 952, 1035 (*Tully*).)  "However, a prosecutor cannot be faulted for a witness's nonresponsive answer that the prosecutor neither solicited nor could have anticipated." (*Tully, supra,* at p. 1035.)  As discussed above, Sartor's explanation for ducking for cover was not inadmissible testimony.  Moreover, the prosecutor explained she did not seek to elicit  any testimony concerning the possibility of an accidental discharge.  The court also stated that Sartor volunteered the statement and confirmed the prosecutor did not elicit it.  Thus, defendant's claim of prosecutorial misconduct is not supported by the record.

Next, defendant asserts the prosecutor engaged in prejudicial misconduct by belatedly disclosing Lamay's supplemental report. A prosecutor is required to disclose to the defense certain categories of evidence in his or her possession. (*People v. Verdugo* (2010) 50 Cal.4th 263, 279–280.) Evidence subject to such disclosure includes "reports or statements of experts." (§ 1054.1,subd. (f).) "'Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial. (§ 1054.7.)' [Citation.]" (*Id.* at p. 280.) There was no discovery violation here. The prosecutor produced the supplemental report to the defense the same morning that she received it, "which satisfies the statutory requirement of immediate disclosure of materials that become known during trial." (See *People v. Verdugo, supra,* at p. 287, see, e.g., *People v. Panah* (2005) 35 Cal.4th 395, 459–460 [reaching similar conclusion as to new report that pathologist prepared on eve of testimony after reexamining microscopic slides at prosecutor's request].)

Defendant asserts the prosecutor could have requested the supplemental report sooner. There is no evidence the prosecutor contemplated getting additional testing for the firearm's "trigger pull" until two court days after Sartor's testimony, at which time the prosecutor immediately advised defense counsel and the court of her intention. Lamay conducted the testing, prepared the report, and the prosecutor provided it the following day. The prosecution has no duty to seek out the evidence sooner than it did. (*People v. Panah, supra,* 35 Cal.App.4th at p. 460, citing *In re Littlefield* (1993) 5 Cal.4th 122, 135.) We note, as did the trial court, defense counsel elected not hire a firearms expert to conduct testing prior to trial despite knowing that a firearm was the murder weapon. In addition, Lamay's testimony that the trigger pull was normal was consistent with her

13

original report that the firearm operated properly. In light of our conclusion that there was no discovery violation, we need not address defendant's contention that the court failed to consider counsel's request for a continuance as an appropriate remedy.

III.    *Sufficiency of the Evidence*

Defendant contends there was insufficient evidence the police vehicle was "distinctively marked" to support his evading a police officer conviction. We disagree.

We review claims challenging the sufficiency of the evidence to uphold a judgment under the substantial evidence standard. Under that standard, we review "the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128; see also *People v. Dalton* (2019) 7 Cal.5th 166, 243.) "'In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'" (*People v. Dalton, supra,* 7 Cal.5th at p. 244, quoting *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "'"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment."'" (*People v. Bean* (1988) 46 Cal.3d 919, 933, quoting *People v. Hillery* (1965) 62 Cal.2d 692, 702.)

Evading a police officer in a vehicle occurs when a person flees or otherwise eludes an officer's vehicle, if the officer's vehicle "is distinctively marked," "is sounding a siren as may be reasonably necessary," "is operated

14

by a peace officer [who] is wearing a distinctive uniform," and "is exhibiting at least one lighted red lamp visible from the front" (and "the person either sees or reasonably should have seen the lamp"). (Veh. Code, § 2800.1, subd. (a).) As relevant here, "[t]o be distinctively marked, a vehicle must have, in addition to a red light and siren, one or more distinguishing physical features that are reasonably visible to other drivers during the pursuit." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1013.)

Defendant does not dispute that the police vehicle had other distinguishing physical features aside from the red light and siren, which were the "alternating headlights and strobe lights in the grille." Instead, he argues there was no evidence that these particular lights were displayed during the pursuit. Detective Rivett testified his vehicle's alternating headlights and strobe lights in the grille were distinguishing physical features of the police vehicle. He further testified the vehicle's "lights" remained activated the entire pursuit. Considering the evidence in the light most favorable to the judgment, including the reasonable inferences to be drawn from such evidence, we conclude there is substantial evidence justifying the jury's finding that the police vehicle was distinctively marked (i.e., all of the police vehicle's lights were activated during the pursuit). (See *People v. Zamudio* (2008) 43 Cal.4th 327, 357–358.)


IV.    *Second Amendment*

Finally, defendant contends his conviction for felon in possession of a firearm (§ 29800, subd. (a)(1)) violates the Second Amendment of the United States Constitution as recently discussed in *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*).

15

Our colleagues in Division Eight and the Fourth Appellate District rejected this argument, finding section 29800 constitutionally valid in view of *Bruen*. We adopt the reasoning set forth in these cases and also conclude that the "statute is constitutional." (*People v. Odell* (2023) 92 Cal.App.5th 307, 316–317 [recognizing "the Second Amendment has boundaries," including "long-standing prohibitions on the possession of firearms by felons"]; accord, *People v. Alexander* (2023) 91 Cal.App.5th 469, 479 [defendant's "challenges to the constitutionality of section 29800(a)(1) and section 30305(a)(1) under the Second Amendment fail under the first step of *Bruen*'s analytical framework"].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


COLLINS, J.

16